Jesus REICH–BACOT, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01356–CR.

Court of Appeals of Texas,
Dallas.

April 30, 1990.

Kerry P. FitzGerald, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before STEWART, THOMAS and KINKEADE, JJ.

## OPINION

THOMAS, Justice.

Jesus Reich–Bacot appeals his murder conviction for which the jury assessed punishment at seventy-five years' confinement and payment of a $10,000 fine. Reich–Bacot raises five points of error, including a complaint that the prosecutor's peremptory challenge of one veniremember was racially motivated in contravention of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We agree; consequently, we reverse the trial court's judgment and remand the cause for new trial.

■ In the third point of error, Reich–Bacot contends that the prosecutor's peremptory challenge of prospective juror number twenty-six constituted impermissible discrimination under *Batson.* To invoke the protection of *Batson,* a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant may establish a prima facie case of discrimination by showing:

1. that he is a member of a cognizable racial group;

2. that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and

3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers on account of their race.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State,* 724 S.W.2d 58, 65 (Tex. Crim.App.1987); *see also* TEX.CODE CRIM. PROC.ANN. art. 35.261(a) (Vernon 1989). In addition, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. When a prima facie case of discrimination is determined, the burden shifts to the State to come forward with racially neutral explanations as to why peremptory challenges were exercised against veniremembers of the same cognizable racial group as the defendant. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton,* 724 S.W.2d at 65.

The record reveals that Reich–Bacot is black; the prosecutor used his peremptory challenges to strike two black veniremembers. Reich–Bacot's trial counsel ob-

jected under *Batson.* Without expressly ruling on the objection, the trial court asked the prosecutor why he struck prospective juror number twenty-six. The prosecutor responded by objecting that the defense had failed to lay the "proper predicate" to shift the burden to the State to justify its strikes. The trial court overruled this objection. The prosecutor then explained that he struck prospective juror number twenty-six because she stated during voir dire that "she had in the past worked with people who were involved in criminal activity. She mentioned working at a halfway house type situation in her experience in Philadelphia."[1] The trial court overruled Reich–Bacot's *Batson* objection.

The record further reflects that prospective juror number twenty-six discussed with the prosecutor her former occupation as a resident advisor at a school in Philadelphia. She stated that she worked with persons with disabilities of various kinds, including work with retarded children, some of whom had behavior problems. She also worked with some adults. She did not work with anyone who got in any trouble; their only problems were related to their handicaps. The prosecutor asked, "You didn't get any strictly criminals or people involved in criminal activity who somehow became your wards?" The veniremember responded that she did not.

Reich–Bacot contends that the prosecutor's explanation did not rebut the prima facie case because there is no support in the record for the reason given for the strike. The State first argues that Reich–Bacot did not make a prima facie case; thus, the prosecutor was not required to give any explanation for the strike. In the alternative, the State contends that the prosecutor's reasons were racially neutral and thus satisfied the State's burden under *Batson.* Lastly, the State argues that the prosecutor's reason justified the strike,

even if the prosecutor's explanation was based on an erroneous assumption.

■ As to the State's contention that Reich–Bacot failed to establish a prima facie case of discrimination, we note that the trial court overruled the State's objection that it was not required to give any explanation. Thus, the trial court impliedly found that Reich–Bacot had met his burden of establishing a prima facie case. Further, the State did offer explanations for the strikes. As the Court of Criminal Appeals has noted, where the opposing party has done everything that would be required of him if the movant had properly made out a prima facie case, whether the movant really did so is no longer relevant. *See Dewberry v. State,* 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989) (quoting *United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). "Appellate review should not become bogged down on the question of whether the defendant has made a prima facie showing in cases where the district court has required an explanation." *United States v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987). Thus, we will not address the State's contention that Reich–Bacot did not make out a prima facie case and will, instead, accept the trial court's implied finding that Reich–Bacot met his initial burden under *Batson.*

■ The State next contends that the prosecutor gave a race-neutral explanation which rebutted Reich–Bacot's prima facie case. The prosecutor stated that he struck veniremember number twenty-six because she had worked with criminals in a halfway house. The State avers that the prosecutor's reason was, on its face, race-neutral, which is all *Batson* requires. The State contends that we need look no further. We disagree. Although a prosecutor's explanations are racially neutral on their face, we must still examine every reason given

---

1. The prosecutor also explained his reasons for striking a second black prospective juror. Because we conclude that the State failed to meet its burden to rebut Reich–Bacot's prima facie case of discrimination with regard to prospective juror number twenty-six, we need not address the peremptory challenge of the second black veniremember. *See Keeton,* 724 S.W.2d at 65 n. 5 (discriminatory strike of any black prospective juror, even if others are ultimately seated on the panel, constitutes *Batson* violation).

by the prosecutor within the circumstances of the particular case to determine whether the "neutral explanation" for the strike is really a pretext for a racially-motivated peremptory challenge. *Whitsey v. State,* No. 1121–87, slip op. at 8 (Tex.Crim.App. May 10, 1989) (not yet reported) (motion for rehearing pending).

 The State also notes that several courts have held that a prosecutor's strike was justified when the veniremember had a personal history which included some involvement with the criminal element. *See, e.g., Chandler v. State,* 744 S.W.2d 341, 344 (Tex.App.—Austin 1988, no pet.) (strikes justified where veniremember's son had criminal conviction); *Garza v. State,* 739 S.W.2d 374, 375 (Tex.App.—Corpus Christi 1987, no pet.) (prospective juror's son-in-law was confined in the penitentiary). In both of the cited cases, however, the record supported the reasons given by the prosecutor for the strikes. In the case at bar, the record shows that the veniremember clearly stated that she did not work with criminals. Her clients were disabled persons who were not involved in criminal activity.

In explaining the standard for appellate review of a trial court's *Batson* ruling, the Court of Criminal Appeals stated:

> We believe that our focus, as well as that of the trial judge, should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal.

*Keeton v. State,* 749 S.W.2d 861, 870 (Tex. Crim.App.1988) (op. following abatement). Even viewed in the light most favorable to the trial court's implied finding that the prosecutor's explanation was race-neutral, the record does not support the trial court's finding. The record clearly establishes that the veniremember did not work with persons who were involved in criminal activity. The reason advanced by the prosecutor is wholly without support by the evidence.

 The State lastly argues that the prosecutor was entitled to "strike from mistake" so long as the assumptions involved are racially neutral. This argument is no more than a variation of its contention that an explanation which is neutral on its face ends our *Batson* inquiry. We cannot accept this argument without condoning the manufacture, without regard to what is shown of the record, of race-neutral, but pretextual, reasons. Further, the out-of-state case relied upon by the State, *Durham v. State,* 185 Ga.App. 163, 363 S.E.2d 607 (1987), is distinguishable. In that case, the court characterized the defendant's prima facie case as "weak", requiring little to rebut it. The State offered as its explanation that the juror had majored in psychology and theology in college and was close friends with several defense attorneys. The record reflected that the juror *minored* in psychology and theology and was *acquainted* with several defense attorneys. Thus, the prosecutor's explanation had *some* support in the record, although the prosecutor's recollection was faulty in some respects. Here, the prosecutor's reason, that the veniremember worked with criminals, was clearly contrary to the evidence. The veniremember could not have stated more clearly that she *did not* work with criminals.

The reason advanced by the prosecutor has no support in the record, nor is there anything in the record to suggest a "strike for mistake." While good faith reliance on information which is later proved to be false may justify a strike, as might confusion of one prospective juror for another, or obvious and understandable confusion of a veniremember's statements, we are not faced with such situations in the case at bar. Under the facts of this case, we conclude that the trial court's implied findings are not supported by the record, even when viewed in the light most favorable to those findings. Consequently, we sustain point of error three. We reverse the judgment

of the trial court and remand for a new trial before a properly-selected jury.