**Marquael Odoric GREER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–08–00146–CR.**

Court of Appeals of Texas, Dallas.

June 9, 2009.

Gary A. Udashen, Sorrels, Udashen & Anton, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Grace E. Shin, Asst. Dist. Atty., Dallas, for State.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice FITZGERALD.

Marquael Odoric Greer was convicted of possession of cocaine and sentenced to 40 years in prison. He argues, among other

things, that the trial court erred by overruling five *Batson* challenges he made during jury selection. The State raises one cross-point that the judgment incorrectly states that Greer was convicted of possession with intent to deliver. We agree with Greer that the trial court committed *Batson* error and consequently reverse Greer's conviction.

## I. *BATSON*

In issues five through nine, Greer argues that the trial court erred by overruling five *Batson* challenges he made to the State's use of peremptory strikes against African–American jurors. *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Greer is African–American.

## A. Facts

After strikes for cause and by agreement, 30 people were left in the venire. Eight veniremembers were African–Americans. After peremptory strikes, Greer raised a *Batson* objection, arguing that the State had used all six of its peremptory strikes against African–Americans. The trial judge asked for a response from the State, and the State gave justifications for each of its strikes. The court heard further arguments from both sides and sustained Greer's *Batson* objection to the strike of one veniremember, Juror No. 27.[1] The State made a *Batson* objection to Greer's strikes, and both sides presented argument. The court overruled the State's *Batson* objections, then reconsidered its initial ruling and decided to overrule all of Greer's *Batson* objections, including his objection to the strike of Juror No. 27.

## B. Law

■■ *Batson* entails a three-step analysis. The opponent of the peremptory strike bears the initial burden of making out a prima facie case of racial discrimination. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 129 S.Ct. 92, 172 L.Ed.2d 78 (2008). If he carries this burden, the burden of production shifts to the proponent of the strike to come forward with a race-neutral reason for the strike. *Id.* If a race-neutral explanation is proffered, the trial court must then decide, as a question of fact, whether the opponent of the strike has proved by a preponderance of the evidence that the strike was a pretext for purposeful racial discrimination. *Id.* We skip the first step of the analysis if the trial court proceeded immediately to the second step by inquiring as to the striking party's race-neutral reasons. *Id.*

■ We may overturn the trial judge's ruling on a *Batson* challenge only if that ruling was clearly erroneous. *Id.* at 447–48. This standard is "highly deferential" to the trial judge. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex.Crim.App.2004). A ruling is clearly erroneous if, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Whitsey v. State*, 796 S.W.2d 707, 721, 726 (Tex.Crim. App.1989); *Hutchinson v. State*, 42 S.W.3d 336, 339 (Tex.App.-Texarkana 2001), *aff'd*, 86 S.W.3d 636 (Tex.Crim.App.2002). If the trial judge's decision is plausible in light of the record viewed in its entirety, or if the judge chose between two permissible views of the evidence, we may not reverse even if we are convinced that we would have decided the matter differently

---

1. For simplicity's sake we will refer to the veniremembers as "Juror No. ——," whether they actually served on the jury or not.

had we been sitting as the trier of fact. *Whitsey,* 796 S.W.2d at 722. If the trial judge erroneously overruled even a single *Batson* objection, we must reverse and remand for a new trial. *Thomas v. State,* 209 S.W.3d 268, 275 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *see also Snyder v. Louisiana,* 552 U.S. 472, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008) (reversing conviction based on wrongful exclusion of one juror).

■ At the outset, the State argues that we may not consider the juror questionnaires, even though they appear in our clerk's record, because Greer did not introduce them into evidence at the *Batson* hearing. It also argues that we may not consider the factual assertions made by Greer's counsel at the hearing because he was not placed under oath. The State relies on *Shields v. State,* 820 S.W.2d 831, 833–34 (Tex.App.-Waco 1991, no pet.), in support of both propositions. *Shields,* however, has been limited by subsequent decisions. The court of criminal appeals has held that juror information cards may be considered, even if they are not admitted into evidence, if defense counsel referred to the cards during the *Batson* argument and it is apparent that the parties and the trial court regarded the cards as part of the evidence on which the trial court would rule. *Cornish v. State,* 848 S.W.2d 144, 145 (Tex.Crim.App.1993). In this case, both attorneys referred repeatedly to the juror questionnaires during the *Batson* hearing. Further, the trial court made reference to the contents of the questionnaires in connection with the State's own *Batson* motion. Accordingly, we may consider the juror questionnaires. Similarly, an appellate court may consider counsel's factual assertions during the *Batson* hearing as evidence if they were considered by the trial court without objection. *White v. State,* 982 S.W.2d 642, 645 (Tex.App.-Texarkana 1998, pet. ref'd); *see also Emerson v. State,* 820 S.W.2d 802, 804 (Tex.Crim.App.1991) ("Because there were no objections made to appellant's undisputed observations [during the *Batson* hearing], we hold that these observations constitute valid proof in support of appellant's prima facie case."); *Jones v. State,* 795 S.W.2d 32, 34 (Tex.App.-Houston [1st Dist.] 1990, no pet.) (same). We will thus accept the factual assertions of Greer's counsel unless they were contradicted or objected to. *See Watkins,* 245 S.W.3d at 451 (relying on appellant's counsel's "identif[ication] for the record which of the prospective jurors were African–American, without objection or correction by the State").

## C. Application of the law to the facts

■ Greer does not challenge the facial race-neutrality of the State's reasons, so we proceed to the third step of *Batson* and the ultimate question: whether the trial court clearly erred by failing to find that the State's proffered reasons for using all of its peremptory strikes against African–Americans were pretexts for race discrimination. The United States Supreme Court has identified several factors to be considered in assessing the striking party's true motives for a peremptory strike:

- whether the party eliminated a far greater proportion of African–American veniremembers than non-African-American veniremembers;

- whether the party's stated reasons for striking the African–American veniremembers would apply equally to non-African-American veniremembers that the party did not strike;

- whether the party used a jury shuffle in a manner that appeared racially discriminatory;

- whether the party disproportionately singled out African–American veniremembers for voir-dire questioning in a way designed to elicit grounds for peremptory challenges; and
- whether the party employed a formal policy to exclude minorities from jury service at the time of trial.

*Watkins,* 245 S.W.3d at 448–49 (summarizing *Miller–El v. Dretke,* 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). Other relevant factors include:

- whether the party relied on reasons not related to the facts of the case; and
- whether the party failed to question the challenged veniremember.

*Whitsey,* 796 S.W.2d at 713–14. The party raising the *Batson* challenge need not prove every factor. In the recent case of *Snyder v. Louisiana,* for example, the Court found a *Batson* violation because the prosecutor's reason for the challenged strike was "highly speculative" and was also implausible in light of the failure to strike two white veniremembers who were comparable to the struck African–American veniremember. 128 S.Ct. at 1209–12; *see also Thomas,* 209 S.W.3d at 275 (reversing conviction because of disparate treatment and disproportionate use of strikes against African–Americans). "The prosecution's proffer of [a] pretextual explanation naturally gives rise to an inference of discriminatory intent." *Snyder,* 128 S.Ct. at 1212.

The panel of 30 veniremembers included eight African–Americans, or 27%. Yet, the State used 100% of its six strikes against African–Americans. This remarkably disproportionate use of peremptory strikes weighs heavily in our analysis. *See Miller–El,* 545 U.S. at 240–41, 125 S.Ct. 2317 (prosecutor's use of peremptory strikes against ten out of eleven available African–American veniremembers was "re-markable" and not likely caused by "[h]appenstance"); *see also Snyder,* 128 S.Ct. at 1207 (noting the prosecution struck all five African–American veniremembers from 36–person panel); *Thomas,* 209 S.W.3d at 275 (prosecution struck six out of seven qualified African–American veniremembers from panel of 38).

We proceed with comparative juror analysis. The State struck Jurors 2, 21, 22, 27, 31, and 48, and Greer raises *Batson* arguments with respect to all except Juror No. 31. We consider Greer's fifth and ninth issues, in which he argues that the State's reasons for striking Juror No. 2 and Juror No. 48 were pretextual.

**1. Juror No. 2**

█ The State asserted that it struck Juror No. 2, an African–American, because she had family members who had been through the criminal justice system and because of her own bad experiences with police officers in the past. The State also relied on the fact that Juror No. 2 opined that rehabilitation of those convicted is the most important objective of "criminal justice punishment." Greer argues that these reasons were pretextual, as shown by comparative juror analysis. We consider each of the State's reasons in turn.

First, the State explained that it struck Juror No. 2 (and Juror No. 31) because "each of these jurors had a family history—or history in their family of someone being through the criminal justice system either in jail or on probation or had—having been sent to the penitentiary." This explanation was factually accurate; on her juror questionnaire, Juror No. 2 wrote that her brother-in-law had served jail time for burglary and that her husband had received probation for burglary. But as Greer points out, the State did not strike other non-African-American veniremembers who shared this characteristic.

We focus in particular on Juror No. 7, a white woman who served on the jury. Juror No. 7 wrote on her questionnaire that her stepdaughter had served jail time for possession of a controlled substance. Yet, despite this similarity to Juror No. 2, the State did not strike Juror No. 7.

■■ Second, the State explained that Juror No. 2 (and Juror No. 31) "had expressed that they, themselves, had bad experiences with police officers, and those two jurors specifically mark[ed] each of those two categories on the questionnaire." This explanation is not factually accurate, because Juror No. 2's questionnaire does not show that she had personally had a bad experience with law enforcement, as the State claimed. Rather, she answered "yes" to the following compound question: "Have you, a family member, or close friend ever had a bad experience with police or law enforcement?" Following that question was the request, "If yes, please explain:", and in the following blank she wrote "brother-in-law put in jail for burglary." Thus, the State's assertion that it struck Juror No. 2 because she herself claimed to have had a bad experience with police officers was factually wrong. We recognize that pretext is not shown merely because an explanation is factually incorrect. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex.Crim.App.2002); *Ford v. State*, 1 S.W.3d 691, 693–94 (Tex. Crim.App.1999). But when the State's explanation for striking a juror is clearly contrary to the evidence, we have held that there is no innocent mistake and reversed for *Batson* error. *See Reich–Bacot v. State*, 789 S.W.2d 401, 404–05 (Tex.App.-Dallas 1990) (reversing conviction where prosecutor's only reason for peremptory strike was flatly contradicted by veniremember's answers during voir dire), *pet. dism'd per curiam as improvidently granted*, 815 S.W.2d 582 (Tex.Crim.App.

1991). *Reich–Bacot* is instructive here, because the juror questionnaire clearly shows that Juror No. 2 did not claim to have had a bad experience with law enforcement personally. The State's reliance on a reason that is clearly contrary to the record is implausible and unconvincing.

For its third and final reason, the State asserted that it struck Juror No. 2 because she and some other veniremembers "had on their questionnaires rehab ... is the primary function of the criminal justice system." To quote the questionnaire, Juror No. 2 marked "Rehabilitate those convicted" as the most important of three possible "objectives of criminal justice punishment." But once again, Juror No. 7, a white woman, marked her juror questionnaire in exactly the same way, and the State did not strike her. In fact, both Juror No. 2 and Juror No. 7 rated rehabilitation the most important objective of criminal justice punishment, deterrence the second most important, and punishment of the convicted the third most important objective. Thus, comparative juror analysis again strongly supports Greer's position that the State's reasons for striking Juror No. 2 were pretextual.

We further note that both Juror No. 2 and Juror No. 7 were quiet during voir dire. Juror No. 2 never said anything, and the only opinion Juror No. 7 voiced was that she would not hold a defendant's decision not to testify against him. In sum, Juror No. 2 and Juror No. 7 had very similar profiles aside from the fact that Juror No. 2 was African–American. We conclude that, under the facts of this case, the State's disparate treatment of Juror No. 2 and Juror No. 7 is persuasive evidence that its stated reason for striking Juror No. 2 was pretextual, especially in light of the State's decision to use all six of its strikes against African–American veniremembers. As to the other factors

identified in the caselaw, only one is relevant to this case: The State did not engage in any individualized questioning of Juror No. 2, which adds further support to Greer's argument.

In response, the State argues that *Batson* does not require it to mechanically strike every single veniremember who possesses a characteristic that might draw a peremptory strike. *See, e.g., Brooks v. State*, 894 S.W.2d 843, 846–47 (Tex.App.-Tyler 1995, no pet.). The court of criminal appeals has held that disparate treatment is not shown where the State strikes a juror because of multiple characteristics and does not strike jurors of other races who share one or more of those characteristics. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App.1992). But the State fails to overcome Greer's disparate-treatment evidence in this case for three reasons. First, the characteristics the State relied on in striking Juror No. 2, who was African–American, were shared by Juror No. 7 to an extreme degree.[2] Yet, the State did not strike Juror No. 7, whose only obvious difference from Juror No. 2 was her race. Second, the most recent precedents from the United States Supreme Court place heightened emphasis on juror comparisons of this kind. In *Miller–El*, the Court relied in part on such disparate treatment. 545 U.S. at 248, 125 S.Ct. 2317 ("The fact that [the State's] reason also applied to other panel members, most of them white, none of them struck, is evidence of pretext."). In *Snyder*, the Court reversed the conviction based almost entirely on juror comparisons between a single black veniremember and two white veniremembers. 128 S.Ct. at 1211–12. *Miller–El* and *Snyder* compel us to consider disparate-treatment evidence very carefully in the *Batson* analysis. Finally, the disparate-treatment evidence in this case is strongly reinforced by the State's extremely disproportionate use of peremptory strikes against African–Americans.

## 2. Juror No. 48

 The State gave only one reason for striking Juror No. 48, an African–American man. It asserted that he, along with several other veniremembers, said during voir dire that "police officers, in their answers, would start off with less credibility than an ordinary civilian." Greer's counsel responded, "I have no notes to that effect anywhere on my sheets. That's not to say that they did not say it. I don't remember hearing them say it.... But if they said that, then the way to get those people is for cause." Our review shows that the record does not support the State's explanation for striking Juror No. 48. The reporter's record contains this passage:

[THE STATE]: You feel that way [that police officers are less credible than other people], [Juror No. 49]?

PROSPECTIVE JUROR: Yes.

[THE STATE]: What about you, [Juror No. 48]?

So can y'all promise to start everybody off on a level playing field?

However, you know we judge people every day. We meet people, and y'all met a lot of strangers today and probably make instant judgment[s] about people. You just do it. It's human nature. Whatever measure stick you use to judge someone's credibility or likability, just apply that standard to every-

---

2. As previously discussed, the only difference between the two veniremembers cited by the State–Juror No. 2's personal bad experience with law enforcement—was clearly not supported by the record. Our own review of the record discloses no other significant difference between the two veniremembers.

body. That's all we're saying. Don't prejudge based on appearance. That's only fair to the Defendant, only fair to the State. Can everybody promise to do that?

Thus, the record confirms that the State asked Juror No. 48 for his feelings about police-witness credibility and that Juror No. 48 did not answer. Moreover, during Greer's voir dire, he asked many veniremembers how they viewed the credibility of police officers as witnesses, including Juror No. 48. Juror No. 48 said that he would view them equally with other witnesses:

> [COUNSEL]: [T]he law says you're supposed to start everybody off equal. You're saying if the police officer comes in here, your experience may cause them—to judge them with a little bit less credibility?
>
> [JUROR NO. 23]: I say equal, but at the same time my feeling. So I say possibility.
>
> [COUNSEL]: There's some feelings that you are, yes, not happy with some police officer in the past. If you're saying somebody testifies, you'll start them off the same level as you would anybody here?
>
> [JUROR NO. 23]: Right.
>
> [COUNSEL]: [Juror No. 22].
>
> [JUROR NO. 22]: Equal.
>
> [COUNSEL]: Okay. [Juror No. 21].
>
> [JUROR NO. 21]: Equal.
>
> [COUNSEL]: [Juror No. 20].
>
> [JUROR NO. 20]: Equal.
>
> [COUNSEL]: [Juror No. 19], I think I already talked to you. [Juror No. 50].
>
> [JUROR NO. 50]: Equal.
>
> [COUNSEL]: [Juror No. 49].
>
> [JUROR NO. 49]: Equal.
>
> [COUNSEL]: [Juror No. 48].
>
> [JUROR NO. 48]: Equal.

Just as with Juror No. 2, we conclude that, on the record before us, the State's reliance on an explanation that is contradicted by the record is persuasive evidence that its stated reason for striking Juror No. 48 was pretextual. Again, our decision in *Reich–Bacot* is instructive. In that case, the only explanation the State gave for striking one veniremember was that she worked with criminals in a halfway house. 789 S.W.2d at 403. But the record showed that the prosecutor had specifically asked her whether she did any work with people involved in criminal activity, and she specifically answered that she did not. *Id.* We held that the trial court erred by accepting the State's explanation:

> The reason advanced by the prosecutor has no support in the record, nor is there anything in the record to suggest a "strike for mistake." While *good faith* reliance on information which is later proved to be false may justify a strike, as might confusion of one prospective juror for another, or obvious and understandable confusion of a veniremember's statements, we are not faced with such situations in the case at bar.

*Id.* at 404. The same is true in this case. The State opted to rely on a single reason for striking Juror No. 48, and the record does not bear it out. Nor is there any indication that the State simply made a mistake. As the Supreme Court emphasized in *Miller–El*, the State is bound by the reason or reasons it proffers at the time of the *Batson* hearing: "[W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." 545 U.S. at 252, 125 S.Ct. 2317.

We conclude that the State's reason for striking Juror No. 48 is unsupported by the record.

### 3. Conclusion

*Snyder* emphasizes that we must consider all circumstances that bear on the presence or absence of racial discrimination. 128 S.Ct. at 1208. If the reason given for striking a single minority veniremember is sufficiently unconvincing, the striking of that veniremember suffices to show *Batson* error. *Id.* But the reviewing court may also consider the strikes of more than one juror together if the outcome is otherwise questionable. *See id.* ("[I]f there were persisting doubts as to the outcome, a court would be required to consider the strike of Ms. Scott for the bearing it might have upon the strike of Mr. Brooks.").

In this case, our consideration of the strikes exercised against Juror No. 2 and Juror No. 48 convinces us that the trial court clearly erred by failing to find that the State's race-neutral explanations were pretextual.[3] First, the State used 100% of its peremptory strikes against African–Americans, who made up only 27% of the venire. This is a compelling fact weighing against the truthfulness of the State's explanations. Second, comparative juror analysis makes the State's explanations for striking Juror No. 2 implausible. Juror No. 7 was very similar to Juror No. 2 except that she was white, but the State struck Juror No. 2 and did not strike Juror No. 7. In *Snyder*, such disparate treatment of similar jurors was alone enough to justify reversal for *Batson* error. 128 S.Ct. at 1212. Third, the State did not engage in any individualized questioning of Juror No. 2. Fourth, the State struck another African–American veniremember, Juror No. 48, based on a single reason that has no support in the record.

Considering all relevant circumstances, we conclude that the trial court's decisions overruling Greer's *Batson* objections as to Juror No. 2 and Juror No. 48 were clearly

erroneous. *See Thomas,* 209 S.W.3d at 275 (sustaining *Batson* challenge based on disproportionate use of strikes and disparate-treatment analysis). The proffer of a pretextual explanation "naturally gives rise to an inference of discriminatory intent." *Snyder,* 128 S.Ct. at 1212. Accordingly, we sustain Greer's fifth issue, in which he complains of the strike against Juror No. 2, and his ninth issue, in which he complains of the strike against Juror No. 48.

Because none of Greer's other appellate issues would entitle him to more relief than his fifth and ninth issues, we need not address them. Likewise, we need not address the State's cross-point concerning an erroneous statement in the judgment that Greer was convicted of possession of cocaine with intent to deliver.

### II. Disposition

We reverse the trial court's judgment and remand for further proceedings.

---

3. We need not consider the issues Greer raises as to Jurors 21, 22, and 27.