Opinion issued September 10, 2010 















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00183-CR

__________


JAMAL LANCE ADAIR, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 1112338






DISSENTING OPINION

 The trial court's finding that appellant, Jamal Lance Adair, did not prove
purposeful discrimination in the State's use of a peremptory strike against venire
member 39, an African-American, is clearly erroneous, and the majority errs in
holding to the contrary. In fact, the clerk's record reveals that the State's sole
explanation for striking venire member 39, i.e., that he provided "no information" on
his juror information card, is objectively false. Accordingly, I dissent. 

 Contrary to the majority's assertion that one has to "strain the [State's] words"
to show that it meant that venire member 39 "provided absolutely no information,"
the simple fact is that "no information" means "no information." There is no other
permissible view of the State's use of the words "no information." Also, there is
nothing in either the clerk's record or the reporter's record to support the majority's
assertion that "it is possible that the [State, at the bench,] . . . point[ed] [out to the trial
court] particular fields on the juror information cards as [it] explained that [venire
member] 39 put no information [on it]." The majority's implication that the State
merely exaggerated its reason for striking venire member 39 defies reason, and the
State, itself, never asserted such an argument. 

 Moreover, the majority errs in concluding that appellant's trial counsel was
required to make an argument to the trial court rebutting the State's proffered reason
for striking venire member 39. The law is well-settled that we are to consider the
"entire record," which obviously includes the clerk's record, in our review for clear
error under Batson. (1) See Watkins v. State, 245 S.W.3d 444, 448 (Tex. Crim. App.
2008). Under Batson, the State must "stand or fall on the plausibility of [its] reasons"
for striking a juror. Miller-El v. Dretke, 545 U.S. 231, 252, 125 S. Ct. 2317, 2332
(2005). As an appellate court, we are not, as does the majority, to "imagine a reason
[for the State] that might not [be] shown up as false." Id. "[W]hen the State's
explanation for striking a juror is clearly contrary to the evidence, . . . there is no
innocent mistake" and the case must be "reversed for Batson error." Greer v. State,
310 S.W.3d 11, 16 (Tex. App.--Dallas 2009, no pet.).

 In his first issue, appellant argues that the trial court erred in denying his
Batson challenge to the State's use of its peremptory strike against two African-Americans, venire members 7 and 39, because the State used 60% of its peremptory
strikes against African-Americans when the eligible panel was made up of 32%
African Americans and the record rebuts the State's proffered race-neutral reasons for
the strikes. See Batson v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986). 
In regard to venire member 39, appellant asserts that the State's representation that
venire member 39 "put no information on his juror information card" is "completely
false."

 Following voir dire, the trial court asked the parties if they had any objections
to seating the jury. Appellant asserted his Batson challenge, noting that the State had
"used six of [its] ten strikes to strike blacks." The trial court responded that three
African-Americans and "at least" three Hispanics were seated on the jury. The trial
court stated that it had not previously observed any systematic racial strikes "by this
particular prosecutor," and it then instructed the State to offer explanations, if it had
any, for its peremptory strikes. The State then offered its reasons for striking the six
African-American venire members identified by appellant in his Batson challenge. 
In regard to the two venire members identified by appellant on appeal, the State
explained that it had struck venire member 7 because, among other things, he was
unemployed and venire member 39 because he put "no information on his juror
information card." Appellant did not offer any additional evidence or argument
following the State's explanations for striking the six identified African-Americans. 
After this brief discussion, the trial court found the State's explanations to be race
neutral and denied appellant's Batson challenge.

 Racial discrimination has no place in a courtroom. Edmonson v. Leesville
Concrete Co., Inc., 500 U.S. 614, 630, 111 S. Ct. 2077, 2088 (1991). The use of a
peremptory challenge to strike a potential juror because of race violates the equal
protection guarantee of the United States Constitution. Batson, 476 U.S. at 86, 106
S. Ct. at 1717. Such an improper strike also violates article 35.261 of the Texas Code
of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 35.261 (Vernon 2006). 
In the face of perceived purposeful discrimination, a party may request a Batson
hearing. See id. 

 In Batson, the United States Supreme Court provided a three-step process for
adjudicating a claim that a peremptory challenge used against a venire member was
based on race. Snyder v. Louisiana, 552 U.S. 472, 476-77, 128 S. Ct. 1203, 1207
(2008); Watkins, 245 S.W.3d at 447. The opponent of the peremptory challenge must
first make a prima facie showing that the peremptory challenge was exercised on the
basis of race. Snyder, 552 U.S. at 476-77, 128 S. Ct. at 1207; Watkins, 245 S.W.3d
at 447. If that showing has been made, the burden of production shifts to the
proponent of the strike to offer a race-neutral basis for striking the venire member in
question. Snyder, 552 U.S. at 476-77, 128 S. Ct. at 1207; Watkins, 245 S.W.3d at
447. Finally, the trial court must determine whether the opponent of the strike has
shown purposeful discrimination. Snyder, 552 U.S. at 476-77, 128 S. Ct. at 1207;
Watkins, 245 S.W.3d at 447. 

 The "critical question" in determining whether the opponent of a strike has
proved "purposeful discrimination" is "the persuasiveness of the prosecutor's
justification for his peremptory strike." Miller-El v. Cockrell, 537 U.S. 322, 338-39,
123 S. Ct. 1029, 1040 (2003). Thus, the "ultimate inquiry" is "not whether" the
prosecutor's reason is "suspect, or weak, or irrational," but whether the prosecutor "is
telling the truth in his or her assertion that the challenge is not race-based." United
States v. Bentley-Smith, 2 F.3d 1368, 1375 (5th Cir. 1993) (emphasis added). The
State's proffer of a "pretextual explanation naturally gives rise to an inference of
discriminatory intent." Snyder, 552 U.S. at 485, 128 S. Ct. at 1212. The Supreme
Court has explained,

 [W]hen illegitimate grounds like race are in issue, a prosecutor
simply has got to state his reasons as best he can and stand or fall on the
plausibility of the reasons he gives. A Batson challenge does not call
for a mere exercise in thinking up any rational basis. If the stated reason
does not hold up, its pretextual significance does not fade because a
trial judge, or an appeals court, can imagine a reason that might not
have been shown up as false.


Miller-El v. Dretke, 545 U.S. at 252, 125 S. Ct. at 2332 (emphasis in bold and italics
added).

 On appeal, a trial court's ruling on the issue of discriminatory intent must be
sustained unless it is "clearly erroneous." Snyder, 552 U.S. at 477, 128 S. Ct. at 1207;
Watkins, 245 S.W.3d at 447. In reviewing a record for clear error, "the reviewing
court should consider the entire record of voir dire; it need not limit itself to
arguments or considerations that the parties specifically called to the trial court's
attention so long as those arguments or considerations are manifestly grounded in the
appellate record." Watkins, 245 S.W.3d at 448 (emphasis added). 

 In determining whether a party has met its burden to show purposeful
discrimination, we may consider a number of factors, including whether the
proponent of the peremptory challenge exercised its challenges to eliminate a far
greater proportion of jurors of the same race of the juror in question, whether the
reasons offered for striking the juror in question "appeared to apply equally well" to
other jurors of a different race who were not struck, whether the proponent of the
peremptory challenge utilized its option to shuffle the jury panels in a manner that
supported an inference of race discrimination, whether the proponent of the
peremptory challenge directed questions expressly designed to elicit grounds for
peremptory challenges disproportionately, in a manner that suggested an intent to
single out jurors of an identified race for elimination, and whether the proponent of
the peremptory challenge had followed a formal policy to exclude jurors of an
identified race. Watkins, 244 S.W.3d at 448-49. 

 Here, the clerk's record clearly reveals that the State's explanation that it struck
venire member 39 because he had put "no information" on his juror card is
objectively false. Contrary to the State's representation to the trial court, venire
member 39 answered almost all of the questions presented to him on the card:


Questions Asked:
Answered:
Male/Female

Race
Did not answer
Age

Date of Birth

Texas Driver's License #

Home Phone

County

Have you ever been an accused,
complainant, or witness on a
criminal case?

Have you ever sustained any
accidental bodily injury
requiring medical attention?
 (Answered, "Yes")
If yes, what type?
Did not answer
Have you ever served on a civil
jury?

Have you ever served on a
criminal jury?

U.S. citizen?

Your occupation
Answered "N/A"
Your work phone 
Answered "N/A"
Your employer
Answered "N/A"
How long?
Answered "N/A"
Spouse's name

Spouse's occupation

Spouse's employer

How long?

Marital status


Highest level of education

Number of children

Age range

Signature


 Venire member 39 provided his gender, age, date of birth, home telephone
number, county of residence, driver's license number, spouse's name, spouse's
occupation, spouse's employer, spouse's length of employment, number of children,
and age range of his children. Venire member 39 also identified that he was married,
had a high school diploma, and was a United States Citizen. In regard to questions
about his employment, venire member 39 answered "N/A" in the spaces provided for
occupation, employer, work phone, and length of his employment. He noted that he
had not previously served on a civil or criminal jury and had never been an accused,
complainant, or witness in a criminal case. Venire member 39 also stated that he had
previously suffered bodily injury requiring medical attention. In fact, venire member
39 did not answer only two questions: (1) his race and (2) the type of bodily injury
that he sustained requiring medial attention. In sum, including the "N/A" answers
supplied by venire member 39, he provided information in 25 of the 27 blanks on his
juror card. Thus, the State's representation to the trial court that venire member 39
had provided "no information" on his juror card is objectively false. Again, "no
information" means "no information." Also, as noted by appellant, venire members
11 and 32, who were not African-American, also did not completely fill out their juror
information cards, yet the State did not strike them.

 Thus, the answer to the "ultimate" question of whether the State told the truth
in its assertion that its peremptory challenge to venire member 39 was not race based
is clearly "no." See Bentley Smith, 2 F.3d at 1375. Because the State's race neutral
explanation was not genuine, it is pretextual, "naturally giv[ing] rise to an inference
of discriminatory intent." Snyder, 552 U.S. at 485, 128 S. Ct. at 1212.

 Because the State's "reason does not hold up," its pretextual significance
stands, and, under the governing law, the majority is not free to "imagine a reason that
might not have been shown up as false." Miller-El, 545 U.S. at 252, 125 S. Ct. at
2332. 

 Accordingly, I would hold that the trial court's finding that appellant did not
establish purposeful discrimination with respect to the State's striking of venire
member 39 was clearly erroneous. The trial court's finding, which was based
entirely upon the State's sole explanation that it struck venire member 39 because he
put "no information" on his juror card, stands in stark contrast to the reality that
venire member 39 answered almost every question presented to him on the card. The
United States Constitution "forbids striking even a single prospective juror for a
discriminatory purpose." Snyder, 552 U.S. at 478, 128 S. Ct. at 1208 (citing United
States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994)). Thus, I would further
hold that the trial court erred in denying appellant's Batson challenge, sustain
appellant's first issue, and remand the case to the trial court for a new trial. The
majority's holding to the contrary and affirmance of the trial court's judgment are in
serious error. It has committed an error of such importance to the State's
jurisprudence that it should be corrected. See Tex. Gov't Code Ann. § 22.001(a)(6)
(Vernon 2004).

 


 

 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Justice Jennings, dissenting.


Publish. Tex. R. App. P. 47.2(b), 47.4.
1. See Batson v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986).