Opinion issued June 14, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00213-CR

———————————

Daniel Harris, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd Judicial District Court 

Harris County, Texas



Trial Court Case No. 1204054

 



 

MEMORANDUM OPINION

          A
jury found appellant, Daniel Harris, guilty of the offense of aggravated kidnapping,[1] and the trial court
assessed his punishment at confinement for thirty-three years.  In two issues, appellant contends that the
trial court erred in denying his Batson[2] challenge to the
composition of the venire panel and he received ineffective assistance of
counsel.

          We
affirm.

Background

          Angela
Odom, the complainant, testified that on February 18, 2009, while she was sleeping
at her home, appellant, her sister’s husband, came to her house at approximately
3:00 or 4:00 a.m.  Appellant pointed a
firearm at Odom and demanded to be shown where her sister was staying.  Odom then drove appellant to the apartment
complex where her sister was staying, and appellant pointed the firearm at Odom
for the duration of the drive.  She
parked her car and, because she did not want to show appellant where her sister
was staying, Odom led appellant to the apartment of her uncle, who was staying
at the same apartment complex as her sister. 
After her uncle answered the door and offered for the two of them to
come inside his apartment, appellant grabbed Odom by the arm and led her back
to her car, where he discharged the firearm into the car’s dashboard because he
was “frustrated.”  As they sat in the car,
Odom saw two police patrol cars park nearby. 
Police officers then approached her car and took appellant and Odom out
of the car.  After questioning appellant,
Odom, her uncle, and her sister, the police officers arrested appellant for
aggravated kidnapping.

          Appellant
testified that he and his wife, Renee Harris, had a fight three weeks before
February 18, 2009, and she had moved out of his house into Odom’s house,
bringing their two children.  He stated
that he went to Odom’s house at 4:00 a.m. to pick up his children, and he
admitted to having a firearm in his pocket because he had previously been
“physically assaulted.”  When Odom
answered her door, she informed appellant that Harris had left and taken the
children elsewhere.  He asked Odom to
show him where Harris was staying, and Odom eventually agreed to show him
Harris’s apartment.  Odom took him to the
apartment of her uncle and told her uncle that appellant was carrying a
firearm, but appellant left the apartment with Odom when he discovered that his
children were not there.  When they
returned to Odom’s car, she drove to a different parking spot in the same
apartment complex, but before they exited the car they were approached by
police officers.  The police officers
ordered both of them out of the car, and two of them pointed firearms at
appellant.  Appellant reached into his
pocket to remove his firearm and “throw it under the seat,” but one of the
police officers ordered him to hand over his firearm, “jumped” on appellant, and
restrained his right hand, which was holding the firearm.  Another officer proceeded to use a taser on
appellant, causing appellant to accidentally discharge the firearm.  Eventually, one of the police officers pried
the firearm from his hand and placed him under arrest.  Appellant denied ever taking the firearm out
of his pocket, pointing it at Odom, or threatening her in any manner.  On cross-examination, appellant admitted that
it is “against the law for [him] to be in possession of a firearm.”  Appellant objected to the line of questioning
as “argumentative” and on the ground that “there’s a time period with regard to
a felon in possession and so forth,” but the trial court denied both
objections.  

During its voir dire, the State
asked the venire panel, “What do you feel is a more important goal of the
criminal justice system to you?”  It
limited the possible answers to “punishment” and “rehabilitation.”  Several venire members answered,
“rehabilitation,” including venire members 24, 29, and 43.

          At
the conclusion of voir dire, appellant raised his Batson challenge to the composition of the venire panel because it
included no African-American jurors. 
Specifically, appellant noted that the State used a peremptory challenge
on venire members 24 and 29, both African-Americans, and “possibly a strike” on
venire member 43, also African-American. 
The State responded that it had simply “struck everybody that was left
that said rehabilitation” and “didn’t even look at their races.”  The trial court denied appellant’s Batson challenge, stating that it did
“believe that those are race-neutral reasons.” 
Appellant later renewed his Batson
challenge, arguing that “it appears that all the racial minorities are struck
by the State.”  The trial court again
denied the challenge.

Batson Challenge

  In his first issue, appellant argues that the
trial court erred in denying his Batson
challenge because the State’s use of its peremptory challenges eliminated all
of the African-American members of the venire panel.  Appellant asserts that the State, in asking
the venire panel what they considered to be the most important goal of the criminal
justice system, “expressly designed to elicit grounds for peremptory challenges
disproportionately.”

The use of a peremptory challenge
to strike a potential juror because of race violates the Equal Protection Clause
of the Fourteenth Amendment to the United States Constitution.  Batson
v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986).  It also violates Texas law.  See Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon Supp. 2011).  In Batson, the United States Supreme Court provided
a three-step process for trial courts to use in adjudicating a claim that a
peremptory challenge is based on racial discrimination. Snyder v. Louisiana, 552 U.S. 472, 476–78, 128 S. Ct. 1203, 1207
(2008); Miller-El v. Cockrell, 537
U.S. 322, 328–329, 123 S. Ct. 1029, 1035 (2003); Batson, 476 U.S. at 96–98, 106 S. Ct. at 1723; Watkins v. State, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).  First, a defendant must make a prima facie
showing that the peremptory challenge has been exercised on the basis of racial
discrimination.  Miller-El, 537 U.S. at 328–329, 123 S. Ct. at 1035.   Second, if the prima facie showing has been
made, the State must offer a race-neutral explanation for the strike.  Id.  Third, the trial court must decide whether
the defendant has shown purposeful racial discrimination.  Id.;
Grant v. State, 325 S.W.3d 655, 657 (Tex.
Crim. App. 2010).

On appeal, a trial court’s ruling
on the issue of discriminatory intent must be sustained unless it is clearly
erroneous.  Snyder v. Louisiana, 552 U.S. at 477–78, 128 S. Ct. at 1207.  The “critical question” in determining
whether the opponent of a strike has proved “purposeful discrimination” is “the
persuasiveness of the prosecutor’s justification for his peremptory strike.”  Miller-El,
537 U.S. at 338–39, 123 S. Ct. at 1040.  The State must “stand or fall on the
plausibility of [its] reasons” for striking a juror.  Miller-El
v. Dretke, 545 U.S. 231, 252, 125 S. Ct. 2317, 2332 (2005).  The State’s proffer of a “pretextual
explanation naturally gives rise to an inference of discriminatory intent.”  Snyder,
552 U.S. at 485, 128 S. Ct. at 1212.  “[W]hen the State’s explanation for striking a
juror is clearly contrary to the evidence, . . . there is no innocent mistake”
and the case must be “reversed for Batson
error.”  Greer v. State, 310 S.W.3d 11, 16 (Tex. App.—Dallas 2009, no pet.).

Here, appellant argues
that the State used its peremptory challenges to remove all potential
African-American venire members from the panel, specifically referring to
venire members 24, 29, and 43.  The
State’s purported race-neutral explanation for its strikes was that they
believed that “rehabilitation” is the primary purpose of the criminal justice
system, and it asserted that it struck “everybody that was left that said
rehabilitation.”  The State maintained,
and the voir dire record demonstrates, that none of the jurors who answered
“rehabilitation” were seated on the jury.  In his brief, appellant concedes that the
State’s purported race-neutral reason “did appear to apply to all jurors.”[3]  Although appellant complains of the “ultimate
discriminatory effect” of the State’s strikes, a peremptory challenge of a
juror on the basis of his belief that rehabilitation is the primary goal of
punishment is an acceptable race-neutral reason.  See Adanandus
v. State, 866 S.W.2d 210, 224–25 (Tex. Crim. App. 1993), cert. denied 114 S. Ct. 1338 (1994); Montgomery v. State, 198 S.W.3d 67, 76
(Tex. App.—Fort Worth 2006, pet. ref’d); Victor
v. State, 995 S.W.2d 216, 221—22 (Tex. App.—Houston [14th Dist.] 1999, pet.
ref’d).  Based on this record, we cannot
conclude that the trial court’s finding that the State’s reason for striking
venire members 24, 29, and 43 was clearly erroneous.  Accordingly, we hold that the trial court did
not err in denying appellant’s Batson
challenge.

We overrule
appellant’s first issue.

Ineffective
Assistance of Counsel

          In
his second issue, appellant argues that his trial counsel provided ineffective
assistance of counsel because he did not object to the State’s introduction of
testimony regarding appellant’s possession of a firearm “on the grounds of lack
of notice of extraneous offense and failure to request a limiting instruction.”

          In order to prove an ineffective-assistance-of-counsel
claim, appellant must show that his trial counsel’s performance fell below an
objective standard of reasonableness and, but for counsel’s unprofessional
error, there is a reasonable probability that the result of the proceeding
would have been different.  Strickland
v. Washington,
466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v.
State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).
 A reasonable probability is a
“probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.  In reviewing
counsel’s performance, we look to the totality of the representation to
determine the effectiveness of counsel, indulging a strong presumption that his
performance falls within the wide range of reasonable professional assistance
or trial strategy. Robertson v. State, 187 S.W.3d 475, 482–83 (Tex. Crim. App.
2006); Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999).  A failure to
make a showing under either prong defeats a claim of ineffective assistance.
 Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Allegations of ineffectiveness must be firmly founded in the
record.  See Thompson, 9 S.W.3d at 813.
 When the record is silent, we may not
speculate to find trial counsel ineffective.  Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001).  In the
absence of evidence of counsel’s reasons for the challenged conduct, an
appellate court commonly will assume a strategic motivation, if any can
possibly be imagined, and will not conclude the challenged conduct constituted
deficient performance unless the conduct was so outrageous that no competent
attorney would have engaged in it.  Id.

Appellant asserts that his trial counsel was ineffective in
not properly objecting when, in the course of the State’s cross-examination of him
about his possession of a firearm during the incident, the State asked, “Now,
you understand that it’s against the law for you to be in possession of a
firearm, correct?”  Counsel objected to
the question as “argumentative,” and the trial court overruled his objection.  When the State again tried to ask the
question, counsel objected a second time, stating, “I believe there’s a time
period with regard to a felon in possession and so forth, which is where I think
the State’s going with this  . . . .”  The trial court overruled the objection, and
the State proceeded,

[State]:          Do
you understand that it’s against the law for you to be in possession of a
firearm?

 

[Appellant]:   Yeah.

 

[State]:          And you knew that when you were carrying around the firearm,
correct?

 

[Appellant]:  Yes.

 

[State]:          But you did it anyway?

 

[Appellant]:  Well,
due to the fact that I was assaulted.

 

[State]:          But
you understand there’s no exception to that law.  There’s no exception for, “Well, I thought I
was going to be assaulted.  So, that’s
why I carried it?”

 

Appellant
asserts that trial counsel “failed to object to the lack of notice of
extraneous offense” and “failed to request a limiting instruction on the
introduction of this extraneous offense.”

          First,
we note that appellant, on direct examination, admitted to carrying a firearm
when he confronted Odom.  Odom and the
police officers who arrived at the scene also testified to appellant’s
possession of a firearm.  Moreover,
appellant, at the beginning of his testimony, stated that he had been twice
convicted of arson in 1996 and sentenced to confinement.  Finally, although appellant did not receive an
instruction specifically related to the unlawfulness of his possession of a
firearm, the trial court did instruct the jury on extraneous offenses in
general as follows,

You are
instructed that certain evidence was admitted before you in regard to the
defendant’s having been charged and convicted of an offense or offenses other
than the one for which he is on trial. 
Such evidence cannot be considered by you against the defendant as any
evidence of guilt in this case.  Said
evidence was admitted before you for the purpose of aiding you, if it does aid
you, in passing upon the weight you will give his testimony, and you will not
consider the same for any other purpose.

 

In
sum, despite appellant’s contention that his trial counsel’s ineffective
assistance left the jury “with the final impression that [he] was simply a
gun-toting kidnapper,” the jury had already heard evidence that appellant
possessed a firearm and had been twice previously convicted of two felony offenses,
and the trial court instructed the jury on extraneous offenses in general.  Thus, even assuming that trial counsel was
ineffective in not objecting to the admission of testimony that appellant’s
possession of a firearm was “unlawful,” we cannot conclude that there is a
reasonable probability that the result of the trial would have been
different.  Accordingly, we hold that
appellant has failed to satisfy the second Strickland
prong.

          We overrule appellant’s second issue.

 

 

 

 

 

 

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Jennings and Keyes.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]
          See Tex. Penal Code Ann.
§ 20.04 (Vernon
2011).

 





[2]
          Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986).





[3]
          Counsel’s list of peremptory
challenges and challenges for cause and the juror identification cards are not
part of the appellate record.  However,
the transcript of the voir dire hearing includes the State’s strikes and the
trial court’s confirmation of the venire members who sat on the jury.