AFFIRM; Opinion issued December 5, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-00367-CR

ROCKY CABALLERO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F10-24811-Y

## OPINION

Before Justices Bridges, Richter, and Lang
Opinion By Justice Richter

A jury found appellant guilty of possession of a controlled substance with intent to deliver. The indictment also contained two enhancement paragraphs alleging prior convictions for possession of a controlled substance with intent to deliver and unlawful possession of a firearm by a felon, to which appellant pled true. The jury found the enhancement paragraphs to be true, and sentenced appellant to seventy years' imprisonment. On appeal, appellant asserts the trial court erred: (1) in denying his motion to suppress, (2) in denying a jury instruction on the voluntariness of his statement, (3) in admitting a prejudicial letter into evidence, and (4) in finding the State did not commit *Batson* error.

Finding no reversible error, we affirm the trial court's judgment.

## I. BACKGROUND

Garland police officer Craig Dockter testified he had been assigned to respond to a Crime Stoppers tip regarding a certain apartment and the possibility of drug sales there. According to the tip, the residents of the apartment had only lived there a few weeks, and there had been a lot of car and foot traffic where men would come out, approach a car, and then the car would depart a few moments later. As a result, Dockter conducted a knock and announce at the apartment on June 22, 2010. Dockter and his partner, Officer Mendoza, knocked on the door around 3 p.m. Dockter did not hear anything going on inside the apartment when they knocked on the door. After a short pause, the officers knocked again, and Dockter heard the sound of the dead bolt as if the door was being locked. The officers knocked a third time, and after a few seconds, the door was opened by a female named Yesenia Dominguez.

Dockter asked for Dominguez's identification. She said that it was upstairs, so Dockter asked if the officers could step inside because it was hot outside. Dominguez replied affirmatively and invited him into the apartment.

As soon as the officers stepped inside, they could smell burnt marijuana. Mendoza observed several men in the kitchen, so he walked to the kitchen to talk to them. Dockter followed slowly behind with Dominguez because he did not want her to go upstairs while the officers were dealing with the men in the kitchen. The men told Mendoza that they had smoked all of the marijuana. Dockter testified that based on his training and experience,

when someone says that the drugs have all been consumed, it is usually not true and is an attempt to get the officers to leave.

At that point, Dockter heard "a lot of movement upstairs." Dockter described what he heard as, "Several different areas of footsteps." He decided that they were going to secure the residence for officer safety and obtain a search warrant. Dominguez told Dockter that there was only one person upstairs, a girlfriend of hers who was getting out of the shower and probably going into the bedroom. Dockter determined that he needed to go upstairs to see if there were more people.

Dockter testified that when he went upstairs, he had his weapon drawn for officer safety because he was "dealing with an unknown and enormous amount of people for the relatively small apartment" and did not have any history or background of anyone there. At the top of the landing, Dockter saw a closed door on the left and grabbed the doorknob; it was locked. Dockter knocked on the door and called out to the person. After a few seconds, the door was unlocked, and Dockter was surprised to see appellant poke his head out the door instead of a female. Appellant stood in the doorway and did not open the door completely. Dockter saw three more people in the bedroom. Dockter asked them all to come out and walk downstairs with him.

In a sub rosa examination, Dockter testified that he asked appellant who he was. Dockter thought that appellant only told him that his name was "Rocky." Dockter stated that he wasn't in the process of writing anything down because he was just trying to buy some time to figure out how to get everyone downstairs. When Dockter next asked appellant what

he was doing there, appellant stated that he lived in the apartment and that it was his. Appellant also said that he and Dominguez shared that bedroom. Other than that, Dockter made small talk with appellant. Dockter was trying to remain calm and keep everyone else calm.

After the officers patted appellant and the others down, Mendoza held them downstairs while Dockter went back upstairs to continue the protective sweep. Dockter said that he wanted to be sure no one else was upstairs in the other two rooms and two bathrooms. Dockter further explained that because there had been so much movement upstairs, other people could have been hiding in bathrooms, showers, and behind closed doors; he also wanted to prevent any destruction of evidence.

On the counter top in the bathroom connected to the bedroom where the people were found, Dockter saw a small tin container, a couple of clear baggies, a towel, and a black pouch in plain view. He also found in plain view a small baggie on a shelf in an adjacent upstairs bedroom. The items were consistent with drug use. Dockter proceeded downstairs to obtain a search warrant.

After obtaining the warrant, the officers went back upstairs to conduct a search. Inside the tin container were two small bags similar to the bag found in plain view, which later tested positive for methamphetamine. A glass meth pipe with residue and a digital scale were wrapped up in a towel. A spoon with white residue was found on the toilet. A cell phone was also found in close proximity to the tin container. Dominguez told Dockter that the phone was appellant's.

-4-

In the bedroom, the officers found letters, some mail, paraphernalia, and some empty baggies under the bed. When Dockter lifted up the mattress, he found a black pouch containing larger baggies of methamphetamine. The pouch was almost in the center of the mattress, not tucked into a corner where it could be grabbed by hand. A small black safe containing more baggies, a scale, a pipe, and some paperwork was found under the bed.

Prior to trial, appellant's counsel filed a motion to suppress all of the evidence seized from the apartment and all statements made by appellant. In support of the motion, appellant argued the police conducted an improper protective sweep of the residence and appellant's statements were the product of custodial interrogation. The trial court denied the motion and made findings on the record.

Upon conclusion of the trial, the jury found appellant guilty of possession of a controlled substance with intent to deliver. The indictment also contained two enhancement paragraphs alleging prior convictions for possession of a controlled substance with intent to deliver and unlawful possession of a firearm by a felon, to which appellant pled true. The jury found the enhancement paragraphs to be true, and sentenced appellant to seventy years' imprisonment. This appeal followed.

## II. ANALYSIS

### *Motion to Suppress*

In his second and third issues, appellant asserts the trial court erred in denying the motion to suppress. Specifically, appellant contends the evidence was seized following an illegal search of his apartment, and he was not given *Miranda* warnings prior to statements

he made during custodial interrogation. The State responds that the search of appellant's apartment was legal and *Miranda* warnings were not required because appellant was not subjected to custodial interrogation.

We begin with appellant's contention that the evidence was seized pursuant to an illegal search. The trial court found that Dockter had a right to encounter Dominguez based on the Crime Stoppers tip and that there was some consent to enter the apartment. The trial court further found that once Dockter was inside the apartment, he had a reasonable basis for continuing his investigation based on the burnt marijuana smell, the three additional people who were in the kitchen and the noise of movement upstairs. Further, the trial court found that there was a reasonable basis for Dockter to conduct the protective sweep upstairs and that the protective sweep was properly extended to the bedroom into the bathroom based on the facts the court had already found, in addition to what Dockter viewed in the bedroom. The trial court also noted that the protective sweep led to the recovery of the other evidence used to support the probable cause affidavit. Finally, the trial court found that the search warrant was valid. Based on its findings, the trial court concluded that the search and seizure was conducted legally under the applicable Texas statutes and the United States and Texas Constitutions.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that

turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). A trial court abuses its discretion if it refuses to suppress evidence that is obtained in violation of the law and that is therefore inadmissible. *Wilson v. State,* 311 S.W.3d 452, 458 (Tex. Crim. App. 2010).

The Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution protect citizens from unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, §9. *See Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990); *Limon v. State,* 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). Article 38.23 of the Texas Code of Criminal Procedure forbids the admission of evidence seized by any person or officer when that evidence has been obtained in violation of the federal or state constitutions or federal and state laws. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *Krause v. State,* 243 S.W.3d 95, 103 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

There is a strong preference for searches to be administered pursuant to a search warrant. *Guitterrez v. State,* 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). Under the Fourth Amendment, a search conducted without a warrant issued on probable cause is per se unreasonable unless it falls within one of the well-established exceptions to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).

Entry into a residence by police officers is a "search" for purposes of the Fourth Amendment. *Limon*, 340 S.W.3d at 756. A warrantless entry by the police into a residence is presumed unreasonable unless the entry falls within an exception. *Id.* at 756. One of those exceptions is when voluntary consent has been obtained from the individual whose property was searched or from a third party who possessed common authority over the searched premises. *Rodriguez*, 497 U.S. at 181; *Limon*, 340 S.W.3d at 756.

Appellant concedes that Dominguez consented to the officers' entry into the apartment, but argues there was no consent to search the upstairs. Appellant also contends the protective sweep was improper and therefore "the search of the upstairs portion of the apartment cannot be justified."[1]

One exception to the necessity of a search warrant is a "protective sweep" performed by police officers. *Maryland v. Buie*, 494 U.S. 325, 327, (1990). A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). The sweep must not be a "full search of the premises" and the searching officers must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 816.[2]

---

[1] To the extent appellant intended to argue that the items seized during the protective sweep did not support the issuance of the warrant, the argument is waived as inadequately briefed. *See* TEX. R. APP. P. 38.1.

[2] Appellant does not challenge the seizure of items that were in plain view during the protective sweep. When police are lawfully on the premises, they may seize without a warrant, anything they discover in plain view if it is immediately apparent that it constitutes contraband. *See State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 1987) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

Here, the officers' entry into the apartment was not unreasonable because Dominguez consented to the entry. Dockter testified that once he was in the apartment, he smelled burned marijuana and saw three men in the kitchen who admitted smoking it. Although the men claimed the marijuana was gone, Dockter noted that in his experience, a claim that the drugs are all gone is usually not true. Dockter also heard a lot of movement upstairs, and determined that he needed to secure the residence for officer safety. When he went upstairs, he was surprised to find a larger number of people in the apartment than he expected to find in such a small space. Dockter stated that other people could have posed a danger to the officers and he wanted to prevent the destruction of evidence. After he checked the first room and escorted appellant and the others downstairs, he returned to check the other two bedroom and bathroom upstairs to insure that there were no additional people hiding. Dockter's search of the premises was limited to a protective sweep, and was necessary under the circumstances to protect the safety of the officers. *See id.* Viewed in the light most favorable to the trial court's ruling, we conclude the trial court did not err in finding Dockter had permission to enter the apartment, and once inside, did not exceed the permissible scope of a protective sweep. Appellant's second issue is overruled.

In his third issue, appellant argues the trial court erred in denying his motion to suppress because the statements he made to Dockter were the product of custodial interrogation without *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Specifically, appellant complains about Dockter's inquiry concerning his name, who lived

in the apartment, and why appellant was there.

The need for *Miranda* warnings arises when a person being questioned by law enforcement officials has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444; *Herrera v. State,* 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). In determining whether an individual is in custody, we first examine all of the circumstances surrounding the interrogation to determine if there was a formal arrest or "restraint of freedom of movement to the degree associated with a formal arrest." *Stansbury v. California,* 511 U.S. 318, 322 (1994). This determination focuses on the objective circumstances of the interrogation and not on the subjective views of either the interrogating officers or the person being questioned. *Id.* at 323. We next consider whether, in light of the particular circumstances, a reasonable person would have felt that he was at liberty to terminate the interrogation and leave. *Thompson v. Keohane,* 516 U.S. 99, 112 (1995); *Herrera,* 241 S.W.3d at 532. The court of criminal appeals has outlined four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest [and the officers' knowledge of probable cause is communicated to the suspect] and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt,* 931 S.W.2d at 255. These situations will indicate

custody if the circumstances would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.; see also California v. Beheler,* 463 U.S. 1121,1125 (1983). Concerning the first three situations, the restriction on freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt,* 931 S .W.2d at 255. Concerning the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect and does not, by itself, establish custody. *Id.*

A person held for investigative detention is not in "custody." *Dowthitt,* 931 S.W.2d at 255. An investigative detention involves detaining a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the status quo to garner more information. *Terry v. Ohio,* 392 U.S. 1, 20-21(1968). The distinction between custody and detention is significant. Neither *Miranda* nor article 38.22 of the Texas Code of Criminal Procedure preclude the admission of noncustodial statements. *See Miranda,* 384 U.S. at 444; TEX. CODE CRIM. PROC. ANN. art. 38.22 §5 (West 2005); *see also Dowthitt,* 931 S.W.2d at 263.

In support of his claim that he was in custody, appellant relies on *Ramirez v. State,* 105 S.W.3d 730 (Tex. App.—Austin 2003, no pet.). Appellant's reliance on *Ramirez* is misplaced. In *Ramirez,* the court did find that the defendant was in custody after the officer told him he was being detained and he was handcuffed and frisked. *Id.* at 740. But the court also concluded that when the officer first arrived at the scene and asked the defendant

–11–

general questions, there was only an investigation detention — even though the officer testified that neither the defendant nor the co-defendant were free to leave. *Id.* at 739–40. The scene remained an investigative detention when a second officer arrived and conducted a pat-down for weapons. *Id.*

Similarly, in the instant case, appellant was not in custody when Dockter asked him to identify himself. Although appellant's freedom of movement was restricted, it was not restricted to the degree of an arrest. Instead, he was being detained in conjunction with Dockter's protective sweep and investigation. As a result, *Miranda* warnings were not required.

Moreover, even if appellant was in custody, the officer's preliminary questions still do not implicate *Miranda*. Not all statements made by a suspect after being taken into custody are products of custodial interrogation. *See Innis,* 446 U.S. at 303; *Jones,*795 S.W.2d at 174 n.3. In order to trigger *Miranda*, the suspect must not only be in custody; he must also be subject to interrogation. *See Miranda,* 383 U.S. at 444. Interrogation encompasses any word or action on the part of police officers that they should know is reasonably likely to elicit an incriminating response from a suspect. *See Rhode Island v. Innis,* 446 U.S. 291, 301(1980). The focus is on the perception of the suspect, not the intent of the police. *Id.; Jones v. State,* 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). General and routine questions do not constitute interrogation. *Ruth v. State,* 167 S.W.3d 560, 571 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *see also Jones,* 795 S.W.2d at 174.

-12-

Appellant was asked his name and what he was doing at the apartment. These questions were routine, general, and were not reasonably likely to elicit an incriminating response. Because there was no interrogation, *Miranda* warnings were not required. *See Estrada v. State*, 313 S.W.3d 274, 296 (Tex. Crim. App. 2010) (warnings not required when suspect is not in custody and there is no interrogation). Appellant's third issue is overruled.

### Voluntariness

In his fourth issue, appellant argues he was entitled to an instruction on the voluntariness of the statements he made to the officer when interrogated at his residence. Appellant contends Dockter had his gun drawn when he asked appellant to identify himself, and as a result, his statement was not voluntary. The State responds that an instruction was not required because appellant was not in custody when he made the statements and *Miranda* warnings were not required.

But we need not decide whether the trial court erred in refusing a voluntariness instruction, because any error was harmless. *See* TEX. R. APP. P. 44.2(b). Appellant's statements that he lived in the apartment and shared a bedroom with Dominguez did not incriminate him. Dominguez had already testified that appellant lived with her in the apartment, and nothing that appellant told Dockter showed that he was guilty of the offense. Appellant's fourth issue is overruled.

### Batson Challenge

Appellant also maintains the trial court erred in overruling his *Batson* objection to

the State's exercise of a peremptory challenge against veniremember Pacheco. According to appellant, the State's use of a peremptory challenge was racially motivated. The State asserts the trial court correctly ruled that the State had a race-neutral reason for striking the veniremembers and did not violate *Batson*. We agree with the State.

The use of peremptory challenges to exclude persons from a jury because of their race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* U.S. CONST. amend XIV; *Batson v. Kentucky*, 476 U.S.79, 84–85 (1986); *Ladd v. State*, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999). Under *Batson,* a prosecutor may not exercise a peremptory strike against a veniremember solely on account of race. *Grant v. State,* 325 S.W.3d 655, 657 (Tex. Crim. App. 2010). *Batson* objections entail a three-step process in the trial court. First, the opponent of the peremptory strike must object and make a prima facie case of racial discrimination. *Greer v. State,* 310 S.W.3d 11, 13 (Tex. App. — Dallas 2009, no pet.). If this burden is met, it shifts to the other party to articulate a race-neutral reason for the peremptory strike. *Davis v. State,* 329 S.W.3d 798, 815 (Tex. Crim. App. 2010). A persuasive or even plausible explanation is not required; all that is required is an explanation devoid of inherent discriminatory intent. *Bausley v. State,* 997 S.W.2d 313, 316 (Tex. App.—Dallas 1999, pet. ref'd).

Once a race-neutral explanation has been tendered, the opponent of the strike is afforded an opportunity to rebut the proponent's explanation. *See Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006). If the striking party proffers a race-neutral reason,

the trial court must then decide as a question of fact whether the opponent of the strike has proved purposeful racial discrimination. *Grant*, 325 S.W.3d at 657. The opponent of the strike bears the burden of proving that the race-neutral reason is a pretext by a preponderance of the evidence. *Greer*, 310 S.W.3d at 13.

A trial court's ruling on a *Batson* challenge will be sustained unless it is clearly erroneous. *Greer*, 310 S.W.3d at 13. A ruling is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* The record of the voir dire and the *Batson* hearing is reviewed in the light most favorable to the trial court's ruling. *Davis*, 329 S.W.3d at 815. Because the evaluation of the credibility of the striking party and veniremembers lies peculiarly within the province of the trial court, a reviewing court defers to the trial court in the absence of exceptional circumstances. *Grant*, 325 S.W.3d at 657. But if the trial court erroneously overruled a *Batson* challenge, the reviewing court must reverse and remand for a new trial. *Greer*, 310 S.W.3d at 14.

During voir dire, defense counsel requested that the State provide a race-neutral reason for striking five Hispanic members of the jury panel. With regard to Pacheo, the only panel member about which appellant complains on appeal, the State noted that Pacheo listed herself as a white female on her juror card. The State further stated:

> She had a sister who had a charge for credit card abuse and stated in her questionnaire that she wants to be in the criminal justice system. We were not able to— we did not have time to develop that through questioning and were concerned about both of those two issues.

The trial court subsequently found that the State had given a race-neutral reason for the strike.

On appeal, appellant contends that the State's reason for striking Pacheo was pretextual. We need not determine whether appellant established a *prima facie* case of discrimination, given that the State articulated its reasons for the peremptory strike and the trial court ruled on the issue of discrimination. *See Young v. State,* 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). Accordingly, we proceed to a review of whether the trial court's ruling was clearly erroneous. *See id.*

The reason for exercising a peremptory strike is race neutral, unless a discriminatory intent is inherent in the explanation given. *Purkett v. Elem,* 514 U.S. 765, 768 (1995). The State's explanation need not be persuasive or even plausible. *Id.* at 767–68. The persuasiveness of the justification is relevant to the trial court's determination of whether the opponent of the strike proved purposeful discrimination. *Id.* at 768. Several factors aid this determination: (1) the State used peremptory challenges to eliminate a far greater proportion of minorities than non-minorities; (2) the State's reasons for eliminating minorities appeared to apply equally well to many of the non-minorities whom the State did not challenge; (3) the State chose to shuffle the jury panel in a manner that supported an inference of race discrimination; (4) the State directed questions designed to elicit grounds for peremptory challenges disproportionately, in a manner suggestive of an intent to single out minorities for elimination; and (5) the county of prosecution followed a formal policy

to exclude minorities from jury service. *Watkins v. State*, 245 S.W.3d 444, 448–49 (Tex. Crim. App. 2008).

The record does not indicate that racial discrimination motivated the State's decision to strike Pacheo. Indeed, it is not possible to analyze the race or ethnicity of the jurors because the record does not include the juror cards.

Appellant asserts that two white jurors also had criminal histories. But the race of these jurors is not apparent on the record, and "the record must reflect more than the mere fact that the objectionable characteristic of a stricken juror was also possessed by accepted jurors of a different racial background." *Whitaker v.. State*, 977 S.W.2d 869, 875 (Tex. App.—Beaumont 1998, pet. ref'd). Moreover, the record does not indicate that the State used its peremptory challenges to eliminate more minorities than non-minorities, requested a jury shuffle, singled out minorities during questioning, or followed a formal policy of excluding minorities from jury service. Therefore, viewing the entire voir dire record and absent exceptional circumstances in this case, we conclude the trial court's denial of appellant's *Batson* motion is not clearly erroneous. *See Nieto*, 365 S.W.3d at 676. Appellant's *Batson* issue is overruled.

### *Admission of Evidence*

During trial, Dominguez provided a letter that she had received from appellant while they were both in jail for the instant offense. The exhibit was admitted without objection for record purposes only, and the trial court allowed the State to publish part of the letter by

agreement. The prosecutor read a portion of the letter to the jury as follows:

> Say, Babe, let's talk about this issue. You got me, right?
> Either you got to say this shit's yours when you go to court,
> or I'll say it's yours when I go. We both have to say it
> belonged to you. That's the only way I'll get off this charge.
> You're not going to be alone. I won't let that happen. And
> yes, I love you. I got love for you and all the above.

When Dominguez was asked how she felt when appellant asked her to take all responsibility, she answered, "I thought [appellant] was full of shit." During the charge conference, the prosecutor informed the trial court that the State wanted to offer a redacted copy of the letter, which contained more than what was read to the jury. Defense counsel objected that almost all of the letter was irrelevant, that it was more prejudicial than probative, and that the letter had been admitted for record purposes only. The prosecutor responded that she believed the letter had been offered for record purposes only because it needed to be redacted. The prosecutor asserted that the rest of the letter went to the relationship between appellant and Dominguez, as well as the admission or veiled admission by appellant that he was in possession of the drugs but that Dominguez should take the blame. The trial court overruled defense counsel's objection and held that the letter had some relevance to the nature and extent of the relationship between appellant and Dominguez. The trial court then allowed the State to re-open its evidence and introduce the redacted letter into evidence.

In his fifth issue, appellant argues the trial court erred in admitting the letter into evidence because it was not relevant and was "highly prejudicial." In particular, appellant

complains that the letter contained two potentially racist remarks, gang signs, and a reference to his prior incarceration at another facilty. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Unfair prejudice refers to the likelihood that the jury would decide the case on an improper basis, commonly, though not necessarily, an emotional one. *See Gigliorianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). There is a presumption that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The court of criminal appeals has identified a non-exclusive list of factors to apply in making a Rule 403 analysis. These factors include, but are not limited to: (1) how probative the evidence is; (2) the potential of the evidence to impress the jury in an irrational but indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Reese v. State*, 33 S.W.3d 238, 240–41 (Tex. Crim. App. 2000).

Weighing the rule 403 factors, the trial court could have reasonably concluded that the probative value of the letter was not substantially outweighed by its inflammatory nature, if any. *See Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006) ("[W]hen determining whether evidence is admissible under Rule 403, we do not consider just whether

the evidence is more prejudicial than probative, we consider whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice."). The letter was probative of appellant's relationship with Dominguez as well as his guilt. There is no evidence of the gang signs about which appellant complains, and the reference to appellant's previous incarceration was redacted. Although the letter contains some derogatory racial language, the language is used by appellant to refer to himself. Other racial references are directed at Dominguez, in an apparent albeit misguided effort to be complimentary. Accordingly, we conclude the trial court did not abuse its discretion by overruling appellant's objection and admitting the letter. Appellant's fifth issue is overruled.

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

MARTIN RICHTER
JUSTICE

Do Not Publish
Tex. R. App. P. 47

110367F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROCKY CABALLERO, Appellant

No. 05-11-00367-CR        V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 7 of Dallas County, Texas. (Tr.Ct.No. F10-24811-Y).
Opinion delivered by Justice Richter, Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 5, 2012.

MARTIN RICHTER
JUSTICE