William Douglas PETERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0205–CR.

Court of Appeals of Texas,
Houston.

March 10, 1983.

Discretionary Review Refused
July 13, 1983.

Frank Follis, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before BASS, BULLOCK and WARREN, JJ.

OPINION

WARREN, Justice.

A jury found appellant guilty of aggravated assault; the court assessed his punishment at 10 years probation. Appellant raises three grounds of error.

In his first ground of error, appellant challenges the sufficiency of the evidence. The indictment alleges that appellant:

intentionally and knowingly and recklessly cause[d] bodily injury to Pamela Denise Lipsey, hereafter styled complainant, by shooting the complainant in the leg with a firearm, *having pointed said load-*

*ed firearm,* a deadly weapon, *at the complainant while the safety mechanism was disengaged.* (emphasis added)

Appellant contends there is no proof he pointed a firearm at the complainant while the safety mechanism was disengaged, as alleged in the indictment, resulting in a fatal variance.

Tex.Penal Code art. 22.02 (Vernon 1966) states:

(a) A person commits an offense if he commits assault as defined in Section 22.-01 of this code and he:

(4) uses a deadly weapon.

§ 22.01(a)(1) defines assault as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another . . ."

The crux of appellant's argument is that the language emphasized in the indictment went further than was necessary, and described or explained an essential element of the offense, and therefore, must be substantially proven as alleged; i.e., that appellant pointed a firearm at complainant while the safety was disengaged describes the use of a deadly weapon, which is the only means of aggravated assault alleged. It is well established that where a person, place or thing necessary to be mentioned in the indictment is described with unnecessary particularity, all circumstances must be proven, *Smith v. State,* 107 Tex.Cr.R. 511, 298 S.W. 286 (Tex.Cr.App.1927), and cannot be rejected as surplusage, for they are thus made essential to the identity. *Maples v. State,* 124 Tex.Cr.R. 478, 63 S.W.2d 855 (Tex.Cr.App.1933). Thus, if the pleader makes unnecessary allegations descriptive of the identity of the offense charged, it is incumbent upon the State to establish such allegations by evidence. *McClure v. State,* 163 Tex.Cr.R. 650, 296 S.W.2d 263 (Tex.Cr.App.1956). See *Burrell v. State,* 526 S.W.2d 799 (Tex.Cr.App.1975); and *Windham v. State,* 627 S.W.2d 505 (Tex.App.—Eastland 1982, pet. granted, 638 S.W.2d 486).

Our review of the evidence must be in the light most favorable to the verdict. The verdict will be sustained if there is evidence which, if believed, shows the guilt

of the accused. *Banks v. State,* 510 S.W.2d 592 (Tex.Cr.App.1974); *Valore v. State,* 545 S.W.2d 477 (Tex.Cr.App.1977).

The complainant was sixteen years old at the time of the offense, and lived with her mother and stepfather, next door to appellant. The day before the offense, she had been to a party at appellant's house while his parents were out of town. The next day, she went over to his house to retrieve her wallet and other items she had left at appellant's house. Appellant would not get them for her, so she had to enter the house and get them herself. There were six teenaged boys in appellant's living room at the time complainant came to the house. She found her wallet in appellant's sister's bedroom and walked into the parent's bedroom, where appellant and two of the boys were. All three were holding rifles. The two other boys had their rifles pointing toward the ceiling, but appellant's rifle was pointed toward complainant. Complainant, having apparently forgotten she found her wallet earlier, told appellant she was looking for her wallet, and he laughed and told her she needed a "bigger hole." Simultaneously, he shot her in the upper left thigh, and she fell to the floor. Appellant left the room to telephone for help. Shortly, complainant's parents arrived, and her mother was with her in the bedroom. When appellant reentered the bedroom, he stepped on complainant's leg below the wound. Her mother asked him to leave her alone, to which he replied, "Shut up, bitch." Complainant then told her mother to tell her father to "kick his ass." Appellant was seated on the edge of the bed when the incident occurred. His right hand was near the trigger, but complainant could not tell if his finger was actually on it.

Complainant testified on cross-examination that she did not know if the rifle held by appellant moved any after she walked into the room. The reference appellant made to her need for a "bigger hole," concerned her vagina; he had used this expression to her on several occasions. She saw the rifle flash as she turned to leave the room; the position of the gun never changed after she entered the room.

Officer D.W. Curry, called by the State, testified on cross-examination that he investigated the crime scene shortly after the incident, and talked to appellant, who told him, "I fired the rifle and hit Pam." He never told Curry that it was an accident.

Officer C.E. Anderson, called by the State, was a firearms expert with the Houston Police Department. He performed a trigger-pull test on appellant's rifle, to determine the amount of pressure required on the trigger to cause the firing pin to release. He found that it took 5½–6¾ pounds of pressure, which is a normal amount for a .233 caliber semi-automatic rifle. Anderson performed tests to see if the rifle would fire accidentally, and it would not. It would not fire with the safety engaged, no matter how hard he pulled the trigger. His opinion was that the trigger had to be pulled for the rifle to fire.

Appellant called Ron Freshour as a firearms expert, who testified that every gun can malfunction. However, when he examined appellant's rifle at the police station, it did not malfunction.

Appellant testified that his parents own a gun store, and were hunting in Madisonville at the time of the incident. He worked at the gun store the day of the incident, until 2 p.m., and then carried home the three rifles that were present in the bedroom. He cleaned the rifle in question that day, including the trigger mechanism. He could not recall whether his finger was on the trigger when complainant walked into the bedroom. He did not know whether there was a bullet in the gun at the time of the shooting. It was pointed at her when she walked in, so he picked it up to move it away from her and it went off.

He testified on cross-examination that it was a coincidence that the bullet hit near complainant's vagina. However, the rifle discharge was simultaneous with his statement to her about her need for a "bigger hole."

◼ Appellant tells us that this evidence does not show he "aimed or moved the gun

in complainant's direction. What really happened is that when complainant walked into the bedroom, she walked into the already-fixed path of the gun." He correlates this with the standard definition of "point", which implies a conscious movement of a weapon in a certain direction. Appellant's semantics notwithstanding, there is evidence from which the jury could have inferred that he "pointed" the rifle at her, especially in light of his statement to her. Appellant also had the time to point the rifle away from her, and the fact that he did not leaves the unmistakable inference that he intended to point it at her. Appellant's contention that the rifle discharged when he tried to point it elsewhere, squares poorly with his admission that he was laughing and telling her she needed a "bigger hole" at that time.

Appellant also asserts that since any firearm can malfunction, it is reasonable to assume that this happened in the instant case, "even though the safety mechanism was engaged." He admits there is no testimony whether he did or did not have the safety on. Officer Anderson testified that when he tested the rifle, it would not discharge with the safety on, no matter how hard he pulled the trigger. Ron Freshour testified the rifle did not malfunction when he tested it at the police station. From this testimony, the jury could infer that the the safety was disengaged when the rifle discharged. Appellant's first ground of error is overruled.

 In his second ground of error, appellant complains that the State made an improper jury argument by asking it to consider facts outside the record. The State made a series of statements which indicates that probation would be all that appellant would receive if found guilty, including: "I am not asking for penitentiary time." It is improper argument at the guilt/innocence stage, to ask the jury to consider the punishment rather than the facts. *Cherry v. State,* 507 S.W.2d 549 (Tex.Cr.App.1974); *McClure v. State,* 544 S.W.2d 390 (Tex.Cr.App.1977). However, appellant made no objection to any of the statements, waiving the error. *Sanchez v. State,* 589 S.W.2d 422 (Tex.Cr.App.1979). Appellant's second ground of error is overruled.

Appellant contends in his third ground of error that he was denied the effective assistance of counsel because of the failure to call witnesses and establish a defense of accident. He maintains that the evidence could have been better developed concerning whether the clip was in the rifle, or on the nightstand next to the bed, when the rifle discharged; that counsel should have called the two boys with appellant, and a third one who entered the bedroom shortly after the incident, because, at the hearing on motion for new trial, each testified the clip was on the nightstand. This, he contends, would have proved that complainant's father, while alone in the room, placed the clip back in the rifle to inculpate appellant.

 The right to effective assistance of counsel does not mean errorless counsel, or counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. *Ex Parte Gallegos,* 511 S.W.2d 510 (Tex.Cr. App.1974). Counsel's services are to be judged by the totality of the representation, and allegations of ineffectiveness will be sustained only if firmly founded. *Ex Parte Prior,* 540 S.W.2d 723 (Tex.Cr.App.1976). An attorney must appraise a case and do the best he can with the facts, and the fact that other counsel might have tried the case differently does not show inadequate representation. *Rockwood v. State,* 524 S.W.2d 292 (Tex.Cr.App.1975); *Harrison v. State,* 552 S.W.2d 151 (Tex.Cr.App.1977).

Counsel at trial also represented appellant at his certification hearing. He had trial subpoenas issued to eight people, including the boys. The two boys in the room made signed statements, counsel knew the substance of their testimony, heard them testify at the certification hearing, and thought they made poor witnesses. He had them present at trial, ready to testify, in case they were needed. Appellant testified in his own behalf and offered the defense of

accident. Counsel felt that the other witnesses would damage appellant's testimony rather than corroborate it.

█ The record shows that appellant's complaint is based on counsel's trial strategy. Counsel had thoroughly investigated and prepared the case, and had each of the witnesses present and ready to testify. The fact that he did not call certain witnesses to the stand may or may not have benefited appellant: it was calculated to benefit him. Appellant has not shown counsel to be ineffective; in fact, the record shows able representation.

The judgment of the trial court is affirmed.