In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00302-CR
_____

GABRIEL SILVA, Appellant

V.

STATE OF TEXAS, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 11-06-06274-CR

## MEMORANDUM OPINION

A jury convicted Gabriel Silva of the felony offense of possession with intent to deliver or manufacture a controlled substance, cocaine, in an amount of 200 grams or more, in a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.112(e) (West 2010), § 481.134(c)(1) (West Supp. 2013). The jury assessed Silva's punishment at fifty-five years' confinement and a fine of $6,500. The trial court sentenced Silva in accordance with the jury's verdict. Silva appeals his

1

conviction and presents four issues for review. Finding no reversible error, we affirm the trial court's judgment.

## I. The Indictment

In his first issue, Silva argues the trial court erred by denying his request for a ten-day continuance in accordance with article 28.10 of the Texas Code of Criminal Procedure after the State amended the indictment by removing the word "Conroe." The State responds that the trial court did not err because it did not amend the indictment. The original indictment alleged in relevant part:

> **And it is further presented** in and to said Court that the defendant committed the above offense within 1,000 feet of premises owned by Kinder Care Daycare, a school, located at 24717 Oakhurst, Conroe, Montgomery County, Texas.

After the jury was seated, but prior to the reading of the indictment, the prosecutor made an oral motion to abandon the word "Conroe" from the indictment as surplusage. Silva's counsel objected to the prosecutor's motion for lack of notice. Silva's counsel requested a continuance to allow him time to prepare a defense against a different indictment. The trial court took the State's motion under advisement and instructed the State to read the indictment to the jury as it was originally charged. The prosecutor read the indictment to the jury, including the word "Conroe," as instructed to do so by the trial court. The trial court withheld ruling on the State's motion until the close of evidence in the guilt phase of trial.

2

Ultimately, the trial court ruled that the word "Conroe" was surplusage and it would allow the State to abandon it as requested. Our review of the appellate record indicates that the State never physically altered the indictment to reflect the court's ruling, did not file an amended photocopy of the original indictment, and did not file a written motion to indicate the proposed alteration to the indictment. While Silva is correct that an amendment to the charging instrument is subject to the limitations and requirements set out in article 28.10 of the Code of Criminal Procedure, we find no evidence in the record that the State amended the indictment to delete the word "Conroe." *See Puente v. State*, 320 S.W.3d 352, 357-58 (Tex. Crim. App. 2010) (indicating that although the trial court approved the parties' agreement to amend the indictment, when the State made no physical changes to indictment and did not file an amended photocopy of the indictment, changes to defendant's judicial confession alone were not enough to constitute an amendment of the indictment); *Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000) (indicating State's motion and trial judge's granting thereof only constitute authorization of eventual amendment of an indictment pursuant to article 28.10, they do not comprise the actual amendment). Therefore, we overrule Silva's argument that the trial court erred in allowing the State to amend the indictment

and in denying his request for a ten-day continuance pursuant to article 28.10. *See* Tex. Code Crim. Proc. Ann. art. 28.10 (West 2006).

As part of his first issue, Silva also appears to argue that if the State includes unnecessary allegations in the indictment that are descriptive of that which is legally essential to charge a crime, the State is bound to prove the allegations, even though needlessly stated. Silva specifically contends that because the State alleged the exact address of the daycare, the State was required to prove the exact address of the daycare as alleged in the indictment, including the city in which the daycare operates. The indictment alleges Silva committed his offense "within 1,000 feet of premises owned by Kinder Care Daycare, a school, located at 24717 Oakhurst, Conroe, Montgomery County, Texas." Silva further contends that the testimony of the daycare's central director was that the daycare was located in Spring, Texas. Silva argues that because the State alleged the daycare was located in Conroe, the State was required to prove this allegation in order to prove Silva committed the offense in a drug-free zone. The cases Silva cites in support of his argument rely ultimately on *Burrell v. State*, 526 S.W.2d 799 (Tex. Crim. App. 1975). *See, e.g. Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000); *Wray v. State*, 711 S.W.2d

4

631, 633 (Tex. Crim. App. 1986).[1] In *Burrell*, the Court explained that "'[a]llegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded.'" *Burrell*, 526 S.W.2d at 802 (quoting 1 Branch's Ann. P.C., 2d ed., Sec. 517, p. 497 (1956)). The Court in *Burrell* also recognized an exception to the general rule regarding surplusage—"where the unnecessary matter is descriptive of that which is legally essential to charge a crime[,] it must be proven as alleged, even though needlessly stated." *Id.* However, the Court of Criminal Appeals overruled the *Burrell* exception in *Gollihar v. State*, 46 S.W.3d 243, 256-57 (Tex. Crim. App. 2001). In *Gollihar*, the Court held that when an appellant alleges a variance between the evidence presented at trial and the allegations in the indictment, the variance is fatal only if it is material and prejudices a defendant's substantial rights. *Id.* at 257 (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). The Court of Criminal Appeals has since identified two ways in which a variance in pleading and proof can occur: (1) a variance involving the statutory language that defines the offense, and (2) a variance involving a non-

---

[1] We note that Silva likewise relied on cases based on the *Burrell* exception in making his arguments to the trial court. *See Sattiewhite v. State*, 600 S.W.2d 277 (Tex. Crim. App. 1979); *Peters v. State*, 652 S.W.2d 460 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd).

5

statutory allegation that is descriptive of the offense in some way. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012).

To prove Silva committed his offense in a drug-free zone, the State is required to prove that the offense was committed "in, on, or within 1,000 feet of the premises of a school, the premises of a public or private youth center, or a playground[.]" *See* Tex. Health & Safety Code Ann. § 481.134(c)(1) (West Supp. 2013). The State's allegation that the daycare was located in Conroe was not essential to prove that Silva committed the offense in a drug-free zone. *See id.* The term "Conroe" simply described the location of the daycare premises. The State alleged the essential fact that Silva committed the offense within 1,000 feet of premises owned by a school. The State was not statutorily required to allege the daycare's specific address, so we conclude the variance involves a non-statutory allegation. *See id.*

When reviewing a variance involving a non-statutory allegation for materiality, we apply a two-prong test. *Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001). First, we consider "'whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial[.]'" *Id.* (quoting *Gollihar*, 46 S.W.3d at 257). Second, we determine if the "'deficiently drafted indictment would subject the

6

defendant to the risk of being prosecuted later for the same crime.'" *Id*. The Court of Criminal Appeals has explained its approach to variances involving non-statutory allegations:

> [F]or non-statutory allegations we tolerate some variation in pleading and proof. We tolerate "little mistakes" that do not prejudice the defendant's substantial rights but we will not tolerate a variance that really amounts to a failure to prove the offense alleged. What is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument.

*Johnson*, 364 S.W.3d at 295. To the extent Silva argues a variance exists, we believe any alleged variance is immaterial. Under the first prong of the test, Silva must demonstrate that the variance actually surprised him—he must demonstrate that he was not sufficiently informed of the charges against him to the extent that he was unable to prepare an adequate defense. *See Santana*, 59 S.W.3d at 194-95. "The object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice." *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981) (internal citations and quotations omitted). The burden of demonstrating surprise or prejudice rests with the defendant. *Santana*, 59 S.W.3d at 194. Silva does not claim he was surprised by the evidence at trial that the daycare was located in Spring. During a hearing before the trial court, the State informed the

trial court that Silva's counsel had received a copy of the offense report, which indicated that the daycare was located in Spring, Texas, not Conroe. The State also indicated that it had forwarded Silva's trial counsel a map that had the correct address written on it. Silva's counsel did not refute having received these items before trial. Further, there is no indication in the record that Silva did not know which daycare the State claimed was located within 1,000 feet of where Silva was found in possession of cocaine. There is no indication in the record that Silva was misled by the State's allegation that the daycare was located in Conroe, or that he was surprised when the proof demonstrated the daycare was actually located in Spring, Texas.

Silva also fails to show how the variance might subject him to subsequent prosecution for the same crime. The indictment clearly identifies the offense, the date of the offense, that the offense occurred "within 1,000 feet of premises owned by Kinder Care Daycare," and that Kinder Care Daycare was located at "24717 Oakhurst," in Montgomery County, Texas. The Geographic Information Systems coordinator for Montgomery County testified that in her position she creates maps to help people visualize things spatially. In this case, she created a map that depicted the premises located at 24717 Oakhurst Drive, Spring, Texas. She testified that the appraisal district identifies Kinder Care Daycare at this address.

The map depicts a 1,000-foot radius around the address. A licensing inspector from the Department of Family and Protective Services and Child Care Licensing testified that she is familiar with Kinder Care Daycare located at 24717 Oakhurst Drive in Spring, Texas and confirmed that it is a daycare licensed by the State of Texas. The center director for Kinder Care testified the daycare is located at 24717 Oakhurst in Spring, Texas. She testified that there are two other Kinder Care facilities located in Montgomery County, both located in The Woodlands. She testified that Kinder Care does not have a facility in Conroe, Texas. She testified that there is only one Kinder Care located on a street named Oakhurst Drive in Montgomery County. The evidence in the record supports that Silva was found in possession of cocaine within 1,000 feet of the daycare facility located at 24717 Oakhurst Drive. If prosecuted again, Silva may avail himself of the entire record, not just the indictment. *See Gollihar*, 46 S.W.3d at 258. Furthermore, the offense here is possession of cocaine with the intent to deliver or manufacture within 1,000 feet of a school. The gravamen of the offense is that he possessed cocaine. If he had possessed cocaine within 1,000 feet of twenty different schools, he would not then be subject to twenty charges of possession. We conclude the State could not prosecute Silva for the same possession offense again just because another daycare is alleged to be within 1,000 feet of where he committed the offense of possession.

9

After applying both prongs of the materiality test, we conclude that to the extent Silva complains of a variance, the variance was immaterial. We overrule Silva's first issue.

## II. Improper Jury Argument

In his second issue, Silva argues that statements made by the prosecutor in closing arguments during the punishment phase of his trial were improper and harmed him. The State contends Silva did not preserve this issue for review. To preserve error for appellate review on an allegedly improper jury argument, a defendant must make an objection, and then must pursue that objection to an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Badall v. State*, 216 S.W.3d 865, 872 (Tex. App.—Beaumont 2007, pet. ref'd); *see* Tex. R. App. P. 33.1(a)(1)(A). If a trial court sustains a defendant's objection, the defendant must request an instruction to disregard and move for a mistrial to preserve error for appeal. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). "It is well settled that when [an] appellant has been given all the relief he requested at trial, there is nothing to complain of on appeal." *Id.*; *see Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

10

Silva complains that the following statements, made by the prosecutor during his closing argument, were outside the record, and thus improper jury argument:

> [STATE]: And what does it tell us that when he has a 7-year-old, a 5-year-old and a 1-year-old he's still dealing cocaine out of his house with those kids around?
>
> [DEFENSE]: Your Honor, I object; it hasn't been proven beyond a reasonable doubt.
>
> [STATE]: That's for the jury to decide, Your Honor.
>
> THE COURT: You may continue.
>
> [STATE]: Thank you, Your Honor. They want you to have sympathy and give him less time for that. Ladies and Gentlemen, I submit to you when somebody is still dealing coke with their kids around that's a reason to give them more time and not less.
>
> [DEFENSE]: Objection, Your Honor. There's no evidence in the record that he was dealing with his kids around. Absolutely none.
>
> THE COURT: Sustained. It's true there's no evidence in the record that I heard concerning him dealing when his kids were around.

Although the trial court had initially overruled Silva's objection, it later sustained the objection as to the statement that Silva had dealt drugs while his children were around.[2] The trial court then appears to make an effort to correct any

---

[2] We note Silva did not obtain an express ruling the first time he objected to the prosecutor's statements; however, the trial court implicitly overruled this objection by directing the prosecutor to continue. *See Ramirez v. State*, 815 S.W.2d

11

misrepresentation of the evidence by stating there was no evidence in the record that Silva dealt drugs when his children were around. While the trial court did not formally instruct the jury to disregard the prosecutor's statements, the trial court's response reflected its disapproval to the jury of the prosecutor's statements as not being supported by the evidence.

Silva also contests the following statement made by the prosecutor during closing argument:

> [STATE]: Every single person he has sold cocaine to has been his victim. Every single child whose parent has been destroyed by cocaine that he has sold them is his victim. Every single child who has tried cocaine that he's sold them is his victim. Remember his victims.
>
> [DEFENSE]: There's no evidence that he sold to children and I ask the jury be instructed to disregard –
>
> THE COURT: Sustained. Please disregard that particular comment regarding selling to children.

Here, the trial court sustained Silva's objection and instructed the jury to disregard the improper comment made by the prosecutor.

Silva contests the following statement also made by the prosecutor during the State's closing argument:

636, 650 (Tex. Crim. App. 1991) (holding the trial judge "implicitly overruled" defendant's objection to the State's question by directing witness to answer the question).

[STATE]: I ask that if you find any redeeming quality in him take a little bit off life, but start from there. Start from the place you can put him where he won't put anybody else in jeopardy again, that he won't keep filling our streets in Montgomery County with the poison that he has been selling so far. Because this poison is a cancer on our society. And he's the tumor. Let's cut him out. Let's get him out of the way so we can at least try to be healthy.

[DEFENSE]: Object to characterizing the defendant as a tumor and calling him names.

THE COURT: Sustained. I will ask [that] the word tumor not be considered by the jury.

The court once again sustained Silva's objection and instructed the jury not to consider the word "tumor."

Silva objected to the prosecutor's statements, and the trial court sustained his objections. The court then took measures to correct any misrepresentation created by the prosecutor's statements. However, Silva did not follow up his objections by moving for a mistrial. Because the trial court granted Silva all the relief he requested and Silva did not pursue the objection to an adverse ruling, he has failed to preserve his complaints for review. *See* Tex. R. App. P. 33.1; *see also Cook*, 858 S.W.2d 473.

### III. Sentencing Evidence—Unadjudicated Extraneous Offenses

Silva argues the trial court abused its discretion in allowing the jury to consider evidence of his unadjudicated offenses during the punishment phase of

13

trial. Silva specifically contests the admission of evidence to show that on September 16, 2011, Silva committed the offense of possession of a controlled substance and possession of a firearm by a felon. Silva asserts two challenges to the trial court's admission of evidence of his unadjudicated offenses. First, Silva argues the trial court erred in not previewing the evidence before admitting it to determine if sufficient evidence existed for the jury to reasonably find he committed the extraneous offenses beyond a reasonable doubt. Second, Silva argues the trial court abused its discretion by refusing to instruct the jury not to consider any evidence of his unadjudicated offenses, after the State failed to prove the chain of custody for the drugs and firearms by failing to establish the first link in the chain of custody and by failing to bring the physical evidence before the jury.

Article 37.07 of the Code of Criminal Procedure governs the admissibility of evidence during the punishment phase of a non-capital trial. *See* Tex. Code Crim. Proc. Ann. art. 37.07 (West Supp. 2013); *see also Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). Article 37.07 provides that the State may offer evidence as to any matter the trial court deems relevant to sentencing, including evidence of an extraneous crime that is shown beyond a reasonable doubt to have

14

been committed by the defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

Relevant punishment evidence is anything that assists the jury in determining the appropriate sentence for a defendant:

> The Legislature has expressly provided that "relevant" punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony as well as extraneous-offense evidence. Because there are no discrete fact issues at the punishment phase of a non-capital trial, we have ruled that the definition of "relevant," as stated in Rule 401 of the Texas Rules of Evidence, does not readily apply to Article 37.07. What is "relevant" to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case. When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."

*Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (footnotes omitted) (quoting *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006)).

When the defendant makes an appropriate objection to extraneous offense evidence, the trial court has the responsibility to determine the threshold issue of admissibility. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). The trial court satisfies its responsibility by making an initial determination that a jury could reasonably find, beyond a reasonable doubt, that the defendant committed the extraneous offense. *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin

15

2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001); *see Mitchell*, 931 S.W.2d at 954. Article 37.07 does not require the trial court to conduct a hearing outside the presence of the jury to determine the admissibility of extraneous offenses during the punishment phase of trial. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *see also Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.—San Antonio 1999, no pet.). "The trial court may determine whether there is sufficient evidence through an oral or written proffer of evidence, motions, pretrial hearings, and the trial, including any bench conferences." *See Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.).

After opening statements during the punishment phase of trial, the State called Officer Juan Martinez to testify. Before Martinez testified as to any details of Silva's extraneous offenses, the court held a bench conference to determine whether there was sufficient evidence for a reasonable jury to find the extraneous offenses beyond a reasonable doubt. The prosecutor informed the court of the witnesses and evidence he intended to offer to prove the extraneous offenses. The State indicated it had filed notice of and intended to offer evidence that on September 6, 2011, Silva committed the offense of possession of a controlled substance and the offense of possession of a firearm by a felon. During the bench conference, the State informed the court it had two police officers and a chemist

16

prepared to testify in support of these offenses. The State explained that the witnesses would (1) testify as to Silva's identity and the place where he was staying, (2) testify as to the details of a valid warrant and search of Silva's place of residence, and (3) testify that during the search of the residence, officers found approximately 105 grams of cocaine and multiple weapons.

At the conclusion of the bench conference, the trial court denied Silva's request for a hearing outside the presence of the jury, and allowed the testimony concerning the extraneous offenses. While the trial court made no express ruling on the admissibility of the extraneous offense evidence, its denial of Silva's request for a hearing constitutes an implied ruling of admissibility. *See Moore v. State*, 82 S.W.3d 399, 408-09 (Tex. App.—Austin 2002, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). As the trial court is not required to conduct a full hearing outside the presence of the jury, the trial court did not abuse its discretion by conducting a preliminary review in this manner. *See Mann*, 13 S.W.3d at 93-95; *Arzaga*, 86 S.W.3d at 781; *Welch*, 993 S.W.2d at 697; *see also* Tex. Code. Crim. Proc. Ann. art. 37.07, § 3(a)(1). Accordingly, Silva's contention that the trial court did not properly conduct a threshold inquiry into the admissibility of the extraneous offense evidence is without merit.

17

We next consider Silva's argument that the trial court erred in failing to instruct the jury it could not consider the extraneous offenses in determining punishment when, according to Silva, the State failed to meet its burden of proving the extraneous offenses beyond a reasonable doubt.

When the State offers evidence of extraneous offenses, the State is required to prove beyond a reasonable doubt that the defendant committed the said offense or acts, or at least that the defendant is criminally responsible for its commission. *See Mitchell*, 931 S.W.2d at 954. However, the trial court's threshold determination is not a finding that the State has proven the extraneous offense beyond a reasonable doubt, but is instead a finding that sufficient evidence exists from which a jury could reasonably so find. *Mann*, 13 S.W.3d at 94 ("[T]he court must make an initial determination at the proffer of the evidence that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense."). If the trial court finds sufficient evidence, the jury then, as the exclusive judge of the facts, determines whether the State has proved the extraneous offense beyond a reasonable doubt. *Mitchell*, 931 S.W.2d at 954.

Here, the trial court properly instructed the jury in its written punishment charge that it was to consider extraneous offenses only if it determined that the State had proven beyond a reasonable doubt that Silva had committed such

18

extraneous offenses or could be held criminally responsible for the offenses. The jury is presumed to have followed the court's charge. *See Gamez v. State*, 737 S.W.2d 315, 324 (Tex. Crim. App. 1987). We overrule Silva's third issue.

## IV. Batson Challenges

Silva argues the trial court committed reversible error by allowing the State, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), to use peremptory challenges to exclude two African American venire members. The State responds that the trial court properly overruled Silva's *Batson* challenge because it gave legitimate, race-neutral reasons for the strikes of the minority panel members.

In *Batson*, the United States Supreme Court held that the State violates the Equal Protection Clause when the State excludes a venire member based on race. 476 U.S. at 85-86. The Court established a three-step process for evaluating *Batson* claims: (1) the defendant must make a prima facie showing of racial discrimination; (2) if the defendant makes that showing, the burden shifts to the prosecutor to articulate a race-neutral reason for the strike; and (3) the trial court must determine if the defendant has proven purposeful discrimination. *Id.* at 96-98; *Nieto v. State*, 365 S.W.3d 673, 675-76 (Tex. Crim. App. 2012). Because the trial court's decision largely turns on its evaluation of credibility, we give the court's decision great deference and will not disturb it unless it is clearly erroneous. *Ladd*

19

*v. State*, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999); *see also Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine a trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole, clearly erroneous.")

During voir dire, Silva made a *Batson* challenge to the State's peremptory strikes of venire member 10 and venire member 19 because both members are African American women that are available to serve and no other African Americans were serving on the jury. The trial court gave the State the opportunity to provide a race-neutral reason for the strikes. The prosecutor responded: "As to Juror Number 10, she had informed the Court that she was the wife of a criminal defense attorney. And on that basis we struck her." The prosecutor then stated, "As for 19, she was the one who said that she thought that users should be punished more than dealers." The trial court found that the reasons given for the strikes were sufficient to show race-neutral reasons for the peremptory strikes.

Silva claims the State's use of two of its ten peremptory strikes to eliminate all of the African Americans in the strike zone shows the State's proffered reasons for striking venire members 10 and 19 were a pretext to purposeful discrimination. In support of his position, Silva relies on *Greer v. State*, 310 S.W.3d 11 (Tex.

20

App.—Dallas 2009, no pet.). But *Greer* is distinguishable because the Dallas Court of Appeals first emphasized in *Greer* that the State used all of its peremptory strikes against African Americans, who made up only 27% of the venire panel. *See id.* at 15. We are unable to tell by the record how many African Americans were members of the venire panel in this case. According to Silva, the State did not use all of its strikes against African Americans; only two of its ten were used against African Americans. The court in *Greer* also considered that the State's proffered reasons were implausible given that a very similar white juror had not been struck. *Id.* at 15-19. Unlike *Greer*, in this case, there is no evidence that the facially race-neutral reasons provided by the State were implausible. Silva does not use comparative juror analysis with regards to venire member 10, but does compare venire member 19 with venire member 7. Specifically, Silva references the following question posed by the State during voir dire, "Is there anybody that thinks that using drugs is worse than selling drugs?" Silva correctly points out that venire members 19, 7, 61, and 3 all responded affirmatively to this question. However, the State then followed up with another question: "Is there anybody who thinks that dealers should be treated lighter than users?" While initially none of the venire members answered affirmatively to this question, later venire member 19 indicated that she believed "people who deliver [drugs] should be judged lighter

21

than those who use [drugs.]" Silva argues that the State's disparate treatment is revealed by comparing venire member 7 and 19 because the State did not strike venire member 7, who was not an African American, when venire member 7 also agreed that using drugs was worse than selling drugs. However, venire member 7 did not agree that a dealer should receive lighter punishment than a user, the express reason given by the State for striking venire member 19.

Silva argues the State's basis for striking venire member 10 was also pretextual. Silva contends the reason given by the State for striking member 10 was inaccurate because venire member 10 did not actually say her husband was a "criminal defense attorney," she merely stated that her husband was a "criminal attorney." In presenting his basis for striking venire member 10, the prosecutor stated, "she had informed the Court that she was the wife of a criminal defense attorney." From the arguments Silva's trial counsel made to the trial court, it is likely that Silva's trial counsel also understood venire member 10's statement to mean that her husband was a criminal defense attorney. Silva's counsel argued, "simply being married to a criminal defense attorney does not disqualify them from serving on a jury." While it is certainly plausible that venire member 10 meant that her husband was a prosecutor, the State is not required to root out every possible interpretation. *See Whitsey v. State*, 796 S.W.2d 707, 722 (Tex. Crim.

22

App. 1989) ("'If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'") (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)).

Because the State offered race-neutral motives for its strikes, and Silva failed to rebut those motives, we cannot say the trial court's rulings were "clearly erroneous." *See Watkins*, 245 S.W.3d at 448. Silva's fourth issue is overruled.

Having overruled Silva's four issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on December 3, 2013
Opinion Delivered June 11, 2014
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.